Moncure, J.
This case was first submitted to the court on a preliminary question, the decision of which in favor of the appellants, it was supposed, would render it unnecessary to consider the case upon the merits. That question was raised by the third assignment of error, which is, that “ it was irregular to hear the cause upon the commissioner’s report until thirty days after the same had been returned to the court.” Code, p. 659, ch. 175, § 9. In Gray v. Dickenson's adm'rs, 4 Gratt. 87, referred to in the petition, this court, on a similar ground, reversed with costs the decree of the court below, without considering the other errors assigned. We would have to take the same course in this case, if it were like that in all respects: but it is not. In that case the decree appealed from was final. The defendant had not appeared and ahtswered; and there was nothing in the record from which it could be inferred that the cause *238 was heard by consent, or that the objection to acting upon the report returned to the court so recently before the cause was heard, had been waived. The only remedy for the correction of the error was by an appeal. In this case, the decree appealed from is interlocutory : and though the bill was taken for confessed as to some of the parties, who cannot be considered as having consented to the hearing of the cause within thirty days after the return of the commissioner’s report, or as having waived any objection thereto; yet they had an opportunity of having the error corrected by motion to the Circuit court; and if there had been no other error in the proceedings, ought to have pursued that course, rather than subject the appellees to the expense and delay of an appeal. The right of appeal from an interlocutory order or decree was not given for the correction of such an error as this; but is limited to “ a decree or order dissolving an injunction or requiring money to 'be paid, or the possession or title of property to be changed, or adjudicating the principles of the causeand was intended to test the merits of the decree or order. If that be right upon the merits, and the only apparent error in the proceedings consists in the fact that the decree or order was prematurely made, the petition for an appeal therefrom may be rejected upon the ground that it is most proper that the case “should be proceeded in further in the court below, before an appeal is allowed therein.” In other words, the petitioner should have the error corrected in the court below if he can. If his application for relief to that court be overruled, he will then be entitled to come to this court and have the decree or order reversed with costs. But if he come to this court without having first unsuccessfully applied for relief to the court below, though he will be entitled to have the decree or order reversed on account of that error; yet the question of costs will depend upon *239 the question, whether the decree or order he correct in principle, upon the case as it stands; and if it be so, the appellee will recover costs as the party substantially prevailing. This is the principle of the decision of this court in Cunningham v. Patteson, 3 Rand. 66; in which the court said that the appellant not having made his objections in the court below, “shall not lie by and take advantage of them in the appellate court, to throw on the opposite party the costs of an appeal, which the law never intended to allow for the correction of such defects.”
The court having announced that, whatever might be its opinion upon the preliminary question submitted,' it would be necessary to consider the question, whether the decree be correct in principle; the case was then fully submitted for its decision.
In considering the case upon its merits, the first question which presents itself is, Whether the appellees are entitled to any relief in the case as it now stands ? In other words, Whether a court of equity has any jurisdiction of the case?
The appellees have obtained no judgments upon their claims. They are creditors at large of Joseph IT. Armstrong. They do not come into court under chap. 179, § 2, p. 677 of the Code, “to avoid a gift, conveyance, assignment or transfer of, or charge upon, the estate” of their debtor. They do not claim to be beneficiaries under, or privies to, the trust created for their debtor by the will of his father. Nor do they set up any claim to a lien on the trust subject under any contract with the trustee, or even with their debtor. They claim only as general creditors of Joseph N. Armstrong, and upon the ground that their claims are for necessaries furnished for the use, maintenance and support of the said Armstrong, his wife and family; and that they are therefore, as they insist, “ entitled to be paid out of the property given by the *240 will aforesaid to the said Joseph H. not only in accordance with the principles of equity, but according to ■ the express provisions of said will.” The claim of a creditor against his debtor is generally in personam only. He can acquire a lien upon specific property, only in some mode prescribed by law, or under some contract made for that purpose, or some trust created for his benefit. If his debtor be a feme covert entitled to separate estate, he can have no claim against her personally, because she is incapable in law of making a contract, to bind herself personally; and can only bind her separate estate; as to which she is regarded 'in equity as a feme sole. All the contracts which she is authorized to make under the settlement, are considered as contracts made in reference to, and as binding upon her separate estate. Her creditors therefore cannot sue her at law, but must go into equity in pursuit of that estate. But if the debtor be sui juris, the creditor cannot go into a court of equity merely because a trust has been created for the benefit of the debtor. He has no more specific lien or claim upon the trust subject than he has upon any other property of his debtor. That he looked to that subject for the satisfaction of the debt when it was created, can give him no such lien or claim. He no doubt then looked to all the property of the debtor for that purpose. In this case the will gave no separate estate to the wife of Joseph H. Armstrong: and not she, but he is the debtor. The trust subject is therefore not bound in equity for these claims, unless bound for them by the provisions of the will, as the bill insists. How the express object of the trust was to prevent the subject from being bound for the debts of Joseph H. Armstrong ; it being by the fifth clause of the will expressly declared that the property given in the first clause (which creates the trust) shall be in no way liable for any debt which the said Joseph H. might *241 then or thereafter owe or be bound °for. Whatever may be the effect of this clause in securing to Joseph hi. Armstrong and his family the enjoyment of the trust subject against the claims of his creditors, it certainly excludes all idea of any right on the part of those creditors to come in as beneficiaries under the trust. Their claim upon the subject, if any, must be against, and not under, the terms of the trust. It must be founded on some contract with the trustee or the cestui que trust, which they or either may have a right to make. It is not pretended that any contract at all was made with the trustee; nor any contract for a lien, with the cestui que trust. The claim is solely based upon a general contract with the cestui que trust, and the principles of equity and the provisions of the will. That these are not sufficient to create a lien and give the appellees a right to come into equity, has already been sufficiently shown. That no contract with a cestui que trust in such a case could give his creditors a lien on the trust subject, and a right to come into equity to subject it to the payment of their claims, is conclusively shown by the case of Markham v. Guerrant & Watkins, 4 Leigh 279, which in most of its features is very much like this. Of all the cases referred to on either side, that is the only one in which the creditors came into a court of equity to charge the trust subject with their-debts, without first having obtained judgments for them at 'law. In the other cases the creditors had obtained judgments and were seeking to enforce them against the trust subject at law when they were enjoined at the suit of parties claiming under the trust. In that case the creditors came into equity on the alleged grounds that relying on the credit of the trust estate they had furnished sundry necessary supplies to John Markham and his family, that Fleming the trustee had assumed the payment of the debt out of the trust estate by a *242 letter which was exhibited, and that Markham had lately died leaving no property but the trust estate. The bill was dismissed without prejudice to any other remedy to which the appellees might be advised to resort.' “It behooves every one (said the court in that case) who deals on the credit of a fund like this, to look to the deed and see how much can be disbursed ; and to make his bargain beforehand with the trustee. In this case then I do not think that the appellees by their dealings with the family, acquired any right to charge the trust fund: if they did, every other person who chose to let the cestuis que trust have goods or property would have the same right; and thus the check interposed by the deed would be destroyed, and one year’s extravagance swallow up the revenue of years to come, and leave the wife and children to starve.” The court strongly inclined to the opinion that even the trustee could not bind the fund by anticipation, and thus absorb the support of future years; and intimated that the proper course to be pursued by persons furnishing necessaries to a family in such a case is, to apply to the trustee to know how far they may go in trusting the cestuis que trust: in which case he will be personally liable to the extent of ’the dealings he may have authorized, and may indemnify himself out of any of the trust funds which m-ay come to his hands and be .properly applicable to that purpose. That case was' more favorable to the claims of the creditors than this is. In that case, by the terms of the trust, all the profits of the trust subject were applicable to the support of the family; whereas in this case, while the trust subject is given for the use and benefit of Joseph N. Armstrong during his life, it is “ with the privilege that he may reside on the farm and have the use of the negroes, so far as may be necessary for his support and maintenance, and for the support and main *243 tenance of his family.” If the bill was properly dismissed in that case, so it ought to be in this. That case is a binding authority in itself, and has been recognized and followed in subsequent cases in this court. Nickell v. Handly, 10 Gratt. 336; Johnston v. Zane's trustees, 11 Id. 552.
It would be premature, and is not intended to intimate any opinion in this case, whether, and to what extent, the trust subject or its profits may ultimately be made liable to the claims of the appellees; the court being of opinion, that whether so liable or not, and to whatever extent liable, they can have no right to come into equity to enforce any such liability until they shall first have obtained judgments at law. And then, if there be a liability which cannot be enforced at law, they may come into equity to enforce it. Upon the question of liability, whenever it may properly arise, the cases cited by the counsel, in addition to that of Markham v. Guerrant & Watkins, may have an important bearing. Those cases are Scott v. Gibbon, 5 Munf. 86; Scott v. Loraine, 6 Munf. 117; Galt v. Carter, Id. 245; Rankin v. Bradford, 1 Leigh 163; Roanes v. Archer, 4 Leigh 550; Butler v. McCann, Id. 631; Nichell v. Handly, 10 Gratt. 336; Johnston v. Zane's trustees, 11 Id. 552. See also Hughes v. Pledge, 1 Leigh 443; Wallace & wife v. Dold's ex'ors, 3 Id. 258; Stinson, ex'or v. Day A wife, 1 Rob. R. 435; Perkins, trustee v. Dickinson, 3 Gratt. 335; which may have some bearing on the question.
That the bill, not showing on its face proper matter for the jurisdiction of the court, may be dismissed for want of jurisdiction, notwithstanding no exception on that ground was taken in the court below, is shown by the case of Hudson v. Kline, 9 Gratt. 379.
The court is therefore of opinion that both the decree of the 25th day of April 1853 and the decree of *244 the 12th day of November 1853 are erroneous, and ought to be reversed with costs, and the bill dismissed with costs, but without prejudice to any other remedy to which the appellees may be advised to resort.
The other judges concurred in the opinion of Moncure, J.
Decree reversed.