# Richmond.

SALAMONE V. KEILEY AND ALS. ·

JANUARY 15th, 1885.

1. CONSTRUCTION OF STATUTES—*Married Woman's act—When she may sue and be sued at law.*—Act approved April 4th, 1877, amended March 14th, 1878 (Acts 1876–'77, page 333, and Acts 1877–78, page 347), except that it confers on married women the right to sue and the liability to be sued *at law* on contracts made by her in relation to and for the disposal of her separate property, and on contracts made by her as a sole trader, confers no power or liability on her beyond what she had prior to its passage as to her separate estate, or what she had by the terms of settlement upon her.

2. PRACTICE IN CHANCERY—*Bills without equity aided.*—Where a bill fails to state a case proper for relief in equity, the court will dismiss it at the hearing, though no objection has been made in the pleadings. *Green & Suttle* v. *Massie*, 21 Gratt. 356. But a defective bill may be aided by the answer and the evidence.

3. PRACTICE AT LAW—*Willful torts.*—The proper remedy for a mere willful tort is by action at law.

4. EASEMENTS FOR SUPPORT—*Remedy.*—Every person is entitled *ex jure naturæ*, to support for his land from the adjacent or subjacent soil. And when deprived thereof through the willfulness, negligence, or want of care and skill of another, he is entitled to compensation in damages; and usually his remedy is by action at law. *Stevenson* v. *Wallace*, 27 Gratt. 77.

5. IMPROVEMENT OF PROPERTY—*Implied contract—Breach—Remedy.*— Where one undertakes to improve his own land, he impliedly contracts to use due care and skill, and to answer to the adjacent land-owner for the consequences of his want of such skill and care. Where there is a breach of this implied contract, the party injured may waive the tort and maintain an action as for a breach of assumpsit.

6. EQUITY JURISDICTION AND RELIEF—*Trustee and feme covert c. q. t.*—

*Improvement of trust subject—Defect of care and skill—Remedy.*— Where a trustee and his *feme covert c. q. t.,* jointly undertake to improve the lot held by him in trust for her separate use, and in so doing fail to use due care and skill, whereby the owner of the adjacent land is damaged, a court of equity hath jurisdiction to ascertain and allow the claims of the injured party for compensation, and to subject the trust property to its satisfaction—either because of the trust, or because of the separate estate involved in the litigation—each being equally a subject of equity jurisdiction.

Appeal of C. C. Salamone from a decree entered June 25th, 1882, against him by the chancery court of the city of Richmond, in a certain cause wherein he was complainant, and A. M. Keiley, trustee for Theresa Barratta; said Theresa Barratta and her husband, Angelo Barratta, were defendants. The record discloses the following facts:

Angelo Barratta, by deed to A. B. Guigon, trustee, dated 20th May, 1869, made a post-nuptial settlement on his wife, Theresa Barratta, of certain property for her sole and separate use and benefit, free from all debts, liabilities and control of her then or future husband; she to possess it and receive the rents; the trustee to convey as she might direct in the event of a sale thereof by her, and receive and pay the proceeds to her to dispose of as she might see fit, she being empowered by said settlement to carry on business with the proceeds and act in regard thereto in all respects as if she were a *feme sole.*

Of the property thus settled were two adjoining lots. on Franklin street, near Shockoe creek, in the city of Richmond. On the eastern lot was a substantial brick store-house; on the western, only wooden structures.

By deed dated December 13th, 1870, the trustee, acting under the written directions of the *cestui que trust,* conveyed to P. Larocco and F. A. Rhio the eastern lot without reserving any right to excavate on the lot retained. These grantees, by deed of June 12th, 1871, conveyed the eastern lot to the appellant, C. C. Salamone, with the usual covenants of title, but

without reservations of any kind.  Guigon having died, A. M. Keiley was substituted as trustee.

The wooden buildings on the retained (western) lot afforded no support to the brick store-house on the lot sold.  These wooden buildings were pulled down in 1871, and the lot whereon they had stood, which was lower than the level of Franklin street at that point, was partly filled up with dirt.

In 1873 a brick house was built by Mrs. Barratta on her lot, the eastern wall of which was built against the western wall of Salamone's house, and contributed to the support of the latter. This new house was several years later removed by Mrs. Barratta, with the concurrence of her trustee, for the purpose of erecting another in its place.  A ditch or trench for the foundation of the eastern wall of the proposed new house was dug by Mrs. Barratta's employés alongside of and immediately contiguous to the foundation of Salamone's western wall, and was several inches deeper than the latter, but no offsets or other supports were left or constructed to sustain Salamone's wall. Whilst this was the situation, there came on the night of the 30th of August, 1880, a heavy rainfall, which washed away the earth from under the foundation of Salamone's western wall and caused it to fall, and shortly thereafter the destruction of the house.  But that western wall of Salamone's house had previously to said excavation become cracked, bulged out from the perpendicular, weak and insecure; and before digging the ditch or trench, Mrs. Barratta, by her trustee, had notified Salamone of her intention to improve her lot, and warned him to protect his wall.

In September, 1880, after having formally demanded of the trustee, Keiley, and the beneficiary, Mrs. Barratta, that they should rebuild his house or compensate him in damages, and their refusal or neglect to comply with the demand, Salamone filed his bill against them and Angelo Barratta in the chancery court of Richmond city, wherein he set forth substantially the aforesaid facts, and averred that the said trustee and *cestui que*

Statement.

*trust* had. for the benefit of the trust property, undertaken to build thereon, and in so doing had deprived the plaintiff of his right to the adjacent and subjacent soil of their lot for the support of his lot and of his buildings thereon, and that his right to compensation in damages for said deprivation and his consequent loss was beyond all doubt, but that owing to the peculiar character or situation of the title of the lot on which the excavation was made, being trust property, in the hands of a trustee holding the naked legal title, while the entire beneficial interest therein and the control and management of the property are vested in a married woman, made it necessary to resort to a court of equity ; that said lot was the only real estate held by said trustee for said married woman, the beneficiary, and that the claim asserted by the said Salamone, having been created in improving said lot, there resulted on it an equitable lien or charge for said claim, and prayed that the same be enforced in his favor.

The defendants answered denying that Salamone had any right of support for his said wall and house from the adjacent or subjacent soil of their lot, or that they did anything to accelerate the fall of his house, and asserting that the said wall of Salamone's house fell of its own infirmity, and that Salamone had been given timely notice of their intention to improve their lot, and warning him to protect himself.

At the hearing a decree was entered referring the cause to a master to inquire and report (1) whether the house had been injured by the said acts of the defendants, and if so, to what extent; and (2) whether the plaintiff was entitled for his house and lot to the support of the defendant's house and adjacent and subjacent soil.

The master having taken the depositions of numerous witnesses, reported (1) that the plaintiff was entitled to support for his land and the house thereon, from the adjacent and subjacent soil of the defendant's lot, but not from the adjacent house, as no such easement had been conveyed to him, or ac-

quired by him by prescription; but that by reason of the contiguity of the buildings and lots, the defendants were under legal obligation to use due care and skill in removing their building so as not to injure that of the plaintiff, and that gross negligence had been committed by defendant's employés in making such removal and in making said excavation, whereby the fall of the plaintiff's building had resulted; and that his damage amounted to the sum of $500.

On the coming in of the report Keiley, trustee, excepted thereto, but the court, on 19th January, 1882, overruled the exception and confirmed the report, and decreed that the plaintiff recover of the trustee the sum of $500, with interest from the 30th of August, 1880, till paid, and his costs, and that the said real estate, held by him as such trustee, was liable therefor, and that unless the same be paid within a prescribed period, the said real estate be sold.

In the meantime Marable & Dansey, builders, who, under contract with Mrs. Barratta, made with the concurrence of her said trustee, had pulled down the house on the said western lot, and erected the new one thereon, filed their bill in the said chancery court against said trustee, and Angelo Barratta and Theresa, his wife, and said Salamone, to enforce on said building and lot their mechanic's lien thereon for the sum of $3,260.18, and stated the pendency of the Salamone suit and the *lis pendens* which he had docketed against said western lot, and asserted the superiority of their lien over the claim of said Salamone, and prayed for relief accordingly.

On the 21st of January, 1882, a decree was entered, by consent of parties, bringing the two causes on to be and they were then heard together, and giving liberty to the parties on either side to file such answers or cross-bills as they might have filed before the entry of said decree.

In June, 1882, the said chancery court did set aside said decree and dismiss with costs the said bill of C. C. Salamone, on

the sole ground that "the bill did not disclose a case proper for the intervention of a court of equity."

Before the rendition of the decree last aforesaid, the defendants, Keiley, trustee, and Barratta and wife, had answered the bill of Marable & Dansey, and set up, in partial defence against their claim, that they had done their work in such an unskillful, negligent, and unworkmanlike manner as to damage them, not only in preventing their raising money to pay off said mechanic's lien, but also in causing them to incur liability to C. C. Salamone for the destruction of his house, and asked to have any judgment or decree that might be entered in his suit against them set-off against the said claim of Marable & Dansey.

In July, 1882, in the said suit of Marable & Dansey, the court, by consent of all the parties except Salamone, decreed the sale of the said western lot, belonging to Mrs. Barratta, and directed the deposit of the proceeds of sale in the Citizens Bank of Richmond, to the credit of the said cause; and reciting the pendency of the suit of Salamone against Barratta and als., affecting said western lot, and the fact that an appeal from the decree therein dismissing the bill was contemplated, directed that $1,000 of the said proceeds be retained to await the decision of the appeal and to satisfy any claim which may be established in favor of said Salamone, and that therefore the property should be sold free from any liability on account of said claim.

*Cannon & Courtney*, for the appellant.

*A. M. Keiley* and *Geo. P. Haar*, for the appellees.

RICHARDSON, J., delivered the opinion of the court.

Here we have the case of a married woman, the owner of separate estate—a lot on one of the principal streets in a populous city—who, in excavating on her property with the view of

building thereon, did her work with such careless and reckless indifference to the rights of the owner of the adjoining lot as to cause the wall of the house thereon to fall, and finally to cause said house to become uninhabitable and useless. The person thus guilty of gross negligence, resulting in serious injury to the adjacent lot owner, being a married woman, is not amenable to an action at law. Nor is the case aided in this respect by the statute commonly known as the "married woman's act," passed April 4th, 1877, and amended by the act of March 14th, 1878, Acts 1876–'77, pages 333–4, and 1877–'78, pages 247–8, inasmuch as the separate estate here in question was acquired long prior to the passage of said act, which only makes the real and personal property of any female who shall *thereafter* marry, and which she shall own at the time of her marriage, and the rents, issues and profits thereof, and any property, real or personal, acquired by a married woman as a separate and sole trader (which may, in Virginia, be said to be an unknown quantity), her separate and sole property, with the power to contract in relation thereto. or for the disposal thereof, and not subject to her husband's disposal or liable for his debts; and confers upon her the right to sue, and makes her liable to be sued in respect of her contracts in relation thereto, &c., &c.; and in other respects said act only applies to real or personal estate *thereafter* acquired by a married woman, and therefore has no application to this case. In short, the act in question, except in the respect that it confers upon married women the right to sue, and makes them liable to be sued at law, or on contracts in relation to and for the disposal of her separate property, and on contracts made by her as a sole trader, confers no power and imposes no liability upon the persons embraced thereby, which did not attach to Mrs. Barratta independently thereof, or by virtue of the express terms of the settlement upon her.

The question, then, to which this court must respond, is,

" Does the bill disclose a case proper for the intervention of a court of equity ?"

In the consideration of this question, it is important to bear in mind that among the great objects for which government is instituted and laws promulgated must be reckoned the protection of the citizen in the lawful acquisition, use and enjoyment of property.   While the ownership of property is intended to confer comfort, independence and happiness, there are, in every well-organized society, grave responsibilities incident to such ownership and use.   No person having the absolute ownership and control of property can rightfully claim exemption from responsibility for such careless or willful misuse of his or her property as results in injury to others.   All alike must answer in damages for the tortious use, as all are alike protected in the rightful enjoyment of property.   If this be not so, then the boast of the law, that " there can be no right without a remedy," is but hollow mockery.

Tested by these principles, how stands the case under consideration ?   By reason of the legal unity incident to the marriage relation, Mrs. Barratta, a married woman, cannot be sued at law.   She is, in the eye of the common law, not a person *sui juris*, though, in equity, she will in respect to her separate estate be so treated; not that she can bind herself by contract, except as to her separate estate, any more than at law, but that she is in equity treated as a person *sui juris*, and may by her acts charge her separate estate, and thus the boast of the maxim above referred to may be vindicated.

Where the facts are, as the master's report in this case ascertains them to be, the right of the party thus injured to recover compensation in damages, by proper proceedings in the proper forum, is settled by the decision of this court in the case of *Stevenson* v. *Wallace*, 27 Gratt. 77, which decision is certainly well-founded, in so far as it fixes liability in damages upon one who, in improving on his own property, is guilty of gross neg-

ligence and want of skill, resulting in injury to the adjacent land owner.

In the case in hand, the defendants did not demur to the plaintiff's bill. The chancery court proceeded in the adjudication of the controversy raised by the bill and the answers thereto, by the aid of the inquiries made at its instance by its commissioner and duly reported, overruling the defendant's exception to the report which established the plaintiff's claim, not only to the compensation asked for on account of the injury done him in the destruction of his building, in consequence of the acts done by the trustee and the *cestui que trust* in their undertaking to improve the trust property, but also to subject that trust property to sale for the satisfaction of that claim. And then, as if upon an afterthought. on the filing of the petition for the rehearing and reversal of its decree, changed its view of the case *in toto*, concluded that all its proceedings theretofore had been without authority and were void, and dismissed the bill with costs to the defendants, upon the sole ground that though the facts were as alleged and the plaintiff had received injury in the manner and under the circumstances stated, yet a court of equity had no jurisdiction to afford him any relief in the premises.

Whilst it is settled, as was contended at bar by counsel for the appellee, that if a bill does not state a case proper for relief in equity, the court will dismiss it at the hearing, though no objection has been taken to the jurisdiction by the defendant in his pleadings (see *Hudson* v. *Kline*, 9 Gratt. 379; *Berkley* v. *Palmer*, 11 Gratt. 625; *Green & Suttle* v. *Massie*, 21 Gratt. 356; 1 Barton's Chy. Pr. 252); on the other hand it is contended by counsel for the appellant that though on its face the bill may not state a case proper for equity jurisdiction, yet if the defendant has failed to demur, the court must, at the hearing, consider not only whether or not the bill alone makes such a case, but also whether or not the bill, aided by the answer and the proofs taken altogether, make such a case, and the

decision of this court, in *Ambler* v. *Warwick & Co.*, 1 Leigh 196, certainly sustains this position. There the majority of the judges united in saying, in substance, that "if the bill do not present a case for the jurisdiction of the court, and other matters appear in the progress of the cause which supply the defect, the defendant, not having demurred to the bill, cannot object to the jurisdiction at the hearing, as, if the bill was for an account, without showing that the amounts were of such a character as to give jurisdiction, and that appeared from the answer or the proof." Other illustrations might be given—as where plaintiff avers that he sold and conveyed land to defendant, and has on it a lien for the unpaid purchase-money, which amounts to a given sum, and the defendant, declining to demur, answers and denies that the unpaid purchase-money amounts to the sum claimed in the bill, but only to, say, one-half of that sum; and at the hearing the conveyance is produced in evidence, and on its face shows a lien retained for a sum therein mentioned. The bill would have been demurrable for failing to state that the lien was reserved by the conveyance; but surely the pleadings and the proof, all taken together, would show a case fit for equity jurisdiction.

This view is countenanced by the case of *Green & Suttle* v. *Massie, supra,* where it was held that, "if at the hearing of a cause the case made upon *the pleadings and the proofs* is one of which a court of equity has no jurisdiction the bill should be dismissed," thus indicating that the court considered that, there being no demurrer, a defective bill may be supplemented by the answer and the evidence.

In the case at bar it is not pretended that the answer itself aided the bill, but that the suit of Marable & Dansey against the trustee, the beneficiary and her husband, and Salamone, for the purpose of enforcing the mechanic's lien for the unpaid price of the work done in making the very improvement of the trust property, in the making of which the injury to the adjacent property of the appellant arose, tends strongly in that

direction. In their bill, Marable & Dansey set out Salamone's *lis pendens* for his claim against the trust property, and assert the superiority of their lien over it. In their answers, the trustee and the *cestui que trust* set up their claim to an equitable set-off against Marable & Dansey's lien, on account of the defective work and negligence, whereby their liability to Salamone arose. Certainly the chancery court had jurisdiction to hear and determine the case made by the bill of Marable & Dansey, and also the counter case made by the answers of the trustee and *cestui que trust*, and to pass upon the priorities between Marable & Dansey and Salamone, and therefore, incidentally, upon the claim of the latter, and to prevent circuity and multiplicity of actions, and thus put an end to litigation.

Appreciating this ground of jurisdiction, said chancery court heard the two causes together; and even after rehearing and reversing the decree of 19th January, 1882, and dismissing Salamone's bill, directed $1,000 of the proceeds of the sale of the trust property to be retained to meet the claim of Salamone in case of an ultimate decision in his favor. We incline to the opinion, in view of the character of the record of Marable & Dansey, heard together with this case, that the circumstances presented are entitled to much consideration as tending at least to show that at the hearing the pleadings and the proofs, taken together, did present a case proper for the jurisdiction of a court of equity. But we deem it unnecessary to decide this point, in view of the fact that upon full consideration of the main question, we are satisfied that the plaintiff's bill presents independently thereof a proper case for equitable jurisdiction and relief.

The grounds of such jurisdiction are two: First. The case involves the liability of a trustee, clothed with the legal title, and also of the trust subject for his acts as such trustee, done in managing and improving the trust property. Second. It also involves the liability of a married woman and her separate estate for her engagements, growing out of her undertaking to

improve that separate estate. Both are sources of original equitable jurisdiction, and certainly none the less so when the same facts involve both of said grounds.

On the part of the appellees, the defendants below, it is contended that the claim of the appellant, the plaintiff below, is one of tort, and not of contract. Were it, as thus curtly stated, a claim founded on a mere willful tort, it might be true as contended, that the proper remedy would be by action at law. But that view is much too superficial, and falls far short of the real demands of the situation.

Just here a very brief summary of the facts will be useful. Here is one acting as trustee in conjunction with the *cestui que trust*, a married woman, in an undertaking to improve the trust property, her separate estate. In so acting, they take away the recognized legal right of an adjoining land owner to have the support of the adjacent and subjacent soil of the trust property, and in depriving him of which they do him an injury. When they undertook such improvement of their property, they impliedly engaged to answer for such liability as in such case the law imposes. It became then and there their legal duty to use proper care and skill; and by implication, they engaged to be responsible for the consequences of their want of care and skill. Whenever the law imposes on one undertaking certain acts a duty, such person engages, impliedly, to perform that duty or else be responsible in damages for default, if injury thereby results to another. The failure to perform that duty may be called a "tort," but it is certainly a tort growing out of the breach of the implied contract which the law raises in such a case, and such a tort as, in the usual phrase of legal proceeding, may be waived, and an action at law maintained, as for a breach of assumpsit. 1 Addison on Torts, 17–23; 2 Ib. 1101; 2 Rob. Pr. (new), 692–3; 3 Ib. 439–40; 4 Ib. 619–20.

In the case at bar it cannot be assumed that the injury done the plaintiff was a willful tort. A. M. Keiley was not person-

ally liable. His act was as trustee, in managing and controlling the trust property, and the injury was the result of the failure of his employés to use the requisite care and skill, constituting a breach of his implied engagement to perform his duty as such trustee in the premises.

The fact that the *cestui que trust* had a husband, who might at common law have been suable for the injury to Salamone had it been a mere willful tort, unconnected with any express or implied agreement of the wife (see 1 Minor, 345), cannot alter her relations to the trust property, or impair the jurisdiction of equity to subject that property to liabilities created by the acts of herself and her trustee in their undertaking to improve it, since that jurisdiction arises, not from the absence alone of all jurisdiction at law, but from an original source. Yet it is true that the husband, Angelo Barratta, had no interest in or control over the trust property, and no participation in the scheme of improvement, as to all of which he was a mere cipher on the wrong side of the digit. And there can be, under the circumstances of this case, no sound reason of justice or law why he should be responsible, or why his possible responsibility, on merely technical rules, should oust a court of equity of its jurisdiction "to put the saddle on the right horse." See 4 Minor, 1202.

"Courts of equity," says an eminent English writer, "from their inherent jurisdiction, assumed from the beginning the exclusive control over trustees in the discharge of their duties, whether affecting real or personal estate." Hill on Trustees, page 42.

In *Huff* v. *Thrash*, 75 Va. 548, Burks, J., delivering the opinion of this court, quotes, with approbation, the remark of Marshall, Chief Justice, in *Fowle* v. *Lawrason*, 5 Peters, 495, that "in all cases *where a trustee is a party,* the jurisdiction of a court of equity is undoubted." From all text-writers and adjudications on the subject it may be gathered that, over every

case involving the liability of trustees as such and of trust estates, a court of equity has jurisdiction.

In *Zetelle* v. *Myers*, 19 Gratt. 62, Joynes, J., says: "It is a general rule that an action at law cannot be maintained against a trustee to recover money due from him in that character." Nor can such action be maintained against him as such trustee to answer for any liability incurred by him solely in that capacity.

But, for the appellees, it is contended that it does not follow that, in *every* case in which a trustee is a party, a court of equity has jurisdiction; and *Sheppards* v. *Turpin*, 3 Gratt. 357; *Armstrong* v. *Pitts*, 13 Gratt. 235; and *Markham* v. *Guerrant & Watkins*, 4 Leigh, 279, are cited as authorities for the position. If it be only meant that where the trustee is improperly made a party, the mere act of making him such cannot afford grounds for equity jurisdiction, the position is undeniable, and is sustained by those cases. But in those cases it was expressly decided that the trustee was not a proper party; in other words, that the bills made no case against him.

In *Sheppards* v. *Turpin*, *supra*, Turpin held property *under* a a trust-deed. The Sheppards claimed that property *against* the trust-deed, and were in possession. The trust was not involved in that litigation. Turpin's remedy was at law.

In *Armstrong* v. *Pitts*, *supra*, a farm and slaves had been devised to trustees for the support of Joseph N. Armstrong and family during his life, with remainder over, with an express declaration that the property should in no way be liable for any of *his* then or subsequent debts or liabilities. He contracted debts for goods and medical services for his family. His creditors filed their bill against him and his wife, and the trustees, who had in no way contracted the debts. The court held, on the authority of *Markham* v. *Guerrant & Watkins*, *supra* (a very similar case), that no contract with the *cestui que trust*, in such a case, would give his creditors a lien on the trust subject and

a right to come into equity to subject it to the payment of their claims. The case is quite dissimilar to the case at bar, in which the acts of the trustee, in improving the trust property, created the liability on the trust property, and thereby involved it in a controversy properly cognizable in a court of equity.

As to the second ground of jurisdiction, it will be borne in mind that Mrs. Barratta, the *cestui que trust*, was a married woman, possessed of a separate estate with the unrestricted *jus disponendi*, with the power incident thereto of charging that estate with the payment of her liabilities, whether created by her express or by her implied engagements. And here a quotation from the case of *Armstrong* v. *Pitts*, *supra*, referred to and relied on by counsel for the appellees, seems appropriate. Moncure J., in delivering the opinion in that case, on page 240, says: "The claim of the creditor against his debtor is generally *in personam* only. He can acquire a lien upon specific property only in some mode prescribed by law, or under some contract made for the purpose, or some trust created for his benefit. If his debtor be a *feme covert*, entitled to a separate estate, he can have no claim against her personally, because she is incapable in law of making a contract to bind herself personally, and can only bind her separate estate, as to which she is regarded in equity as a *feme sole*. All the contracts which she is authorized to make, under the settlement on her, are considered as made in reference to, and as binding upon, her separate estate. Her creditors, therefore, cannot sue her at law, but must go into equity in pursuit of that estate. But if the debtor be *sui juris*, the creditor cannot go to equity merely because a trust has been created for the benefit of the debtor." And in *Walters* v. *Farmers Bank of Virginia*, 76 Va. 15, Staples J., in pronouncing the opinion of the court, said: "No judgment *in personam* can be rendered against a married woman for liabilities incurred during the coverture, and, there-

fore, a chancery court is the appropriate tribunal for the enforcement of the remedy against her."

The adjudications of this court upon the powers and liabilities of married women as to their separate estates are numerous and too familiar to require citation or comment. Some of them are cited in the opinion of Burks J. in *Bain & Bro.* v. *Buff's adm'r*, 76 Va. 371. The doctrine taught by them, so far as applicable to this case, is that, when a married woman possesses a separate estate of which she has the *jus disponendi*, and expressly or impliedly creates a liability, she is taken to have charged that estate with the satisfaction thereof, and the appropriate tribunal for the remedy is a court of equity.

For the appellees it has been strenuously urged that Mrs. Barratta made no engagement to answer for any liability to Salamone which she might incur in her undertaking to improve her lot. Expressly she did not, though she did notify him of her determination to improve her lot. But when she embarked on that enterprise, she impliedly engaged to do the duty which the law imposed on her in such a case, namely—to use due care and skill, and to answer for all liability resulting from her default. Had she been *sui juris*, there could have been no question as to the implied engagement, and her liability for the injury to Salamone's property, and her amenability therefor at law. In equity, however, *quoad* her separate estate, she is *sui juris*. By her default in not using due care and skill in improving her separate estate, she impliedly charged that estate with her liability, and that estate may be pursued in equity for the satisfaction of that liability.

We are, therefore, of opinion that the decree of the chancery court of the city of Richmond, dismissing the bill of the appellant, is erroneous, and must be reversed and annulled, with costs to the appellant, and a decree entered here providing for the payment to the appellant of the sum of $500, the amount of his damage as ascertained by the commissioner in his report, with interest thereon from the 30th of August, 1880, until paid,

out of the $1,000, part of the proceeds of sale of the trust pro-
perty, which was directed by the decree of the court below, in
the case of Marable & Dansey, to be retained to satisfy this
claim in the event of an ultimate decision in favor of Salamone.

HINTON J., dissented.

DECREE REVERSED.