# CHARLESTON.

## JOHN P. BERRY v. WINIFRED G. SQUIRES

### Submitted February 12, 1924.   Decided March 11, 1924.

1.  EQUITY—*Bill Aided by Answer and Not to be Dismissed for Failure to State Nature of Defendants' Claim.*

    Though a bill to quiet title to land may be defective because it fails to state the nature of the defendant's claim, yet if it is not demurred to, the bill may be aided by defendant's answer and the proofs; so that if it appears therefrom, upon the hearing, that the cause is one in which equity has jurisdiction, the cause should not be dismissed because of such defect in the bill. (p. 718).

2.  WILLS—*Devise to Son for Life With Remainder to His Children Then Living Construed.*

    Under the following provision of a will, "I, Craven Berry, will and bequeath to my son, John P. Berry, for life and then to his children, now living", (three sons and one daughter, Myrta Berry) a certain tract of land, "but it is my will and desire that out of the above described land, Myrta Berry shall have one-fourth thereof according to quantity and quality to be set off to her by commissioners appointed by the Judge of the Circuit Court, which land shall be held by her, and shall be inherited by her children if any be born unto her, if she die without issue her portion of the land shall *desend* to her brothers", held:

    (1). Myrta Berry takes an estate for life in the one-fourth so to be set off to her, with remainder therein to her issue, and in default of issue then over to her brothers.

    (2). The one-fourth so devised to Myrta Berry with remainder to her issue is her full portion of the land under the will, and neither she nor her children have any interest in the other three-fourths.

    (3). John P. Berry takes a life-estate in the three-fourths, with remainder therein in fee to his three sons. (p. 719).

3.  JUDGMENT—*Remainder Held Not Determined by Decree in Partition.*

    Where subsequently at the suit of one of the devisees for a construction of the will and for partition, by decree, the one-fourth is assigned by metes and bounds to Myrta Berry for life with remainder to her issue and the three-fourths is assigned by metes and bounds to John F. Berry for life and "then to his children", the respective rights of the parties

to the interest in remainder in the three-fourths part are not determined by such decree, that question not being in issue. (p. 724).

4. SAME—*Devisee May Bring Suit to Quiet Title to Remove Claims Asserted Under Will.*

John P. Berry, having acquired the interests in remainder of his three sons in the tract so assigned to him for life, is not estopped by such decree from asserting a fee simple title to that tract; and being in actual possession thereof, he may maintain a suit against the children of Myrta Berry to quiet his title thereto and to remove as a cloud thereon their claims asserted under the will. (p. 724).

Appeal from Circuit Court, Braxton County.

Suit by John P. Berry against Winifred G. Squires and others. From a decree for plaintiff, defendants appeal.

*Affirmed.*

*W. E. Hines,* for appellants.
*Haymond & Fox,* for appellee.

MEREDITH, PRESIDENT:

This is a suit to quiet title to certain lands claimed in fee simple by the plaintiff, John P. Berry, who filed his bill against Winifred G. Squires and Sarah E. Squires, infant children of Myrta Berry Squires, deceased, and Ned B. Squires, her husband, in his own right and as guardian for said infants. From a decree for plaintiff the defendants appeal.

The bill alleges that Craven Berry, plaintiff's father, by will dated November 24, 1905, and duly probated January 9, 1906, "devised to the plaintiff for his life with remainder to his children, then living, the upper end of the home farm of said Craven Berry, on O'Brien's Fork of Salt Lick Creek, in Braxton County, West Virginia, which tract of land is bounded and described in the will, and the boundary described in the will contains about 211 acres"; that at the time of the making of Craven Berry's will and at the date of his death, the plaintiff had four children, namely; Russell E. Berry, Minter O. Berry, Arthur C. Berry and Myrta Berry, three sons and one daughter, and "these are the children meant by

Craven Berry in his will and to whom he left the remainder in the land aforesaid, devised by him to this plaintiff for his life''; that afterward said Russell E. Berry, died intestate unmarried and without issue and plaintiff, as his sole heir at law, inherited from him his interest in remainder in said land; and that since then, by regular conveyances plaintiff ''has obtained from each, Minter O. Berry and Arthur C. Berry, his entire interest in the said remainder in the said land.''

He further states that according to the provisions of the will commissioners were appointed by the circuit court, who assigned to Myrta Berry the one-fourth of the said land so devised to plaintiff for life as in the will directed, ''which one-fourth so assigned being in quantity according to quality, is about 46 acres, and the same was specifically bounded, marked and designated upon the ground''; that Myrta Berry married the defendant, Ned B. Squires, and later died intestate, leaving the defendant infants, Winifred G. Squires and Sarah E. Squires, as her only children and heirs at law, and her surviving husband, Ned B. Squires; that she and her husband occupied the 46 acres from their marriage until her death, and that since then the husband and infant children have been and are now occupying and using it; that although, under the will, the plaintiff is entitled to the use of the 46 acre tract for his life, yet he has accorded to his daughter and her heirs the enjoyment thereof without interference by him on account of his life estate therein.

He also says that in a suit by the state of West Virginia against William Miller, Trustee, and others, it was ascertained by the circuit court of Braxton County that a portion of the land so devised to plaintff for life, with remainder to his children, was waste and unappropriated land belonging to the state, and the plaintiff purchased at a sale made by the commissioner of school lands, under a decree in that cause 38.8 acres of the land so acertained to be waste and unappropriated, being within the land claimed by plaintiff and without the 46 acres so assigned to his daughter, and that he afterward acquired a deed for said 38.8 acre tract. Copies of the will and deed are exhibited with the bill.

He further alleges that he is in the actual possession of all the land so devised to him for life, except the portion thereof assigned to Myrta Berry, and that he claims and holds the same in fee simple, and that the part so held by him contains 165 1-4 acres by survey; that ''he has been about to sell his said 165 1-4 acres, on different occasions, but the question has arisen with prospective purchasers as to the effect of the provisions of the will of Craven Berry, it being claimed that under the said will, at the termination of the plaintiff's life estate, the said Myrta Berry's heirs may be entitled to a further interest than the 46 acres assigned to her and may hold some part of the said tract claimed by the plaintiff as his absolute property.'' He therefore says this claim is a cloud upon his title and prays that it may be removed by proper decree.

The portion of Craven Berry's will involved in this controversy reads as follows:

I, Craven Berry, will and bequeath to my son, John P. Berry for life and then to his children, now living and being the upper end of my home farm on OBriens Fork of Salt Lick Creek, in Braxton County, Beginning at a rock on the side of the Flatwoods road; thence a straight line to a sugar tree on the west bank of Obriens Fork near the south gate to the land; thence due South 175 ft. to a stake; thence West to the back line of my said farm; thence with lines of same, and with the lands of Jenkins heirs, McMillions heirs, Phebe E., and John C. Berry, and around to the church, and with the road to the beginning, but it is my will and desire that out of the above described land, Myrta Berry shall have one-fourth thereof according to quantity and quality to be set off by Commissioners appointed by the Judge of the Circuit Court, which land shall be held by her, and shall be inherited by her children if any shall be born unto her, if she die without issue her portion of the land shall *desend* to her brothers. I also give to my son, John P. Berry, all the farming implements owned by me on my said farm. I bequeath to my daughter, Sarah Lourena Floyd for her life, and then to her children, the lower end of my said farm extending from the rock at the road, with the lines of the land bequeathed to John P. Berry to the back line of my home farm; thence with the lines of same, and with the lines of John Hammer, and others around to the road, and up

the same to the beginning but it is my will and desire
that George Wilson shall have one-third part in value
of the above said land, which I bequeath to my daugh-
ter, Mrs. Floyd, which land shall be set off in the same
manner as the interest of Myrta Berry. It shall be held
by the said Georgie Wilson, and shall descend to her chil-
dren if any shall be born unto her, but if she die without
issue, the said land shall be inherited by the children of
Sarah Lourena Floyd.''

The infants by guardian ad litem filed a formal answer.
Ned B. Squires, as their guardian, and in his own right an-
swered, denying plaintiff's construction of the will; denied
that the entire 211 acre tract was devised to plaintiff for
life, with remainder to his children, but that on the contrary
it was the intention of Craven Berry to devise to plaintiff,
with remainder to his children, the 211 acres, after deducting
therefrom the one-fourth thereof, devised to Myrta Berry for
her life with remainder in said one-fourth to her children,
and that while plaintiff has a life estate in the 165 1-4 acres
now held by him, yet upon his death, the infant children of
Myrta Berry, deceased, are entitled to have an undivided
one-fourth of said 165 1-4 acres, except that portion thereof,
if any, which is made up of the tract of 38.8 acres; but that
they have no interest in the 38.8 acre tract. He further relies
upon certain decrees of the same court in another chancery
cause, entitled Georgia Wilson v. Vena Floyd and others, and
files the record of that cause as an exhibit.

The court decreed that plaintiff is the owner in fee of the
165 1-4 acres and that the claim made in behalf of Winifred
G. Squires and Sarah E. Squires that they have an interest
in the remainder in fee is unfounded.

The first error assigned is that the court improperly over-
ruled the demurrer to plaintiff's bill.

Defendant Ned B. Squires demurred to the bill. As there
is no relief asked against him, his demurrer should have been
sustained. He is not impleaded by any allegation in the
bill. He is not connected in any way with the subject matter
in litigation, except by way of mere recital. He acquired no
curtesy interest in the lands. So far as the record shows, he
does not and could not make any claim to the lands in his
own right. Plaintiff seeks no relief affecting the 46 acre tract,

but confines his case to the 165 1-4 acres now in his possession.

No demurrer was interposed on behalf of the infant defendants. It is insisted here that the court had no jurisdiction, because the bill fails to show that plaintiff's possession is threatened. We do not understand that in a suit to quiet title it need be shown that plaintiff's possession is threatened. While the bill must show that he is in possession, the matter that he desires adjudicated is the title, not possession, as he already has that.

Another ground urging lack of jurisdiction is that the bill does not show that the infant defendants make any claim to the land. Their claim as set up in the bill is quite vague and indefinite; we are cited to *Sulphur Mines Co.* v. *Boswell,* 94 Va. 480, 27 S. E. 26, where it was held that "A bill will not lie to remove as a cloud upon title a mere verbal claim or oral assertion of the ownership of property". There can be no doubt upon this proposition; but we think it quite apparent that whatever be the claim the defendants assert, it is not a mere verbal claim, but one made under the will of Craven Berry. We recently held in *Hyman* v. *Swint,* 94 W. Va. 627, 119 S. E. 866, that in a suit to quiet title to land, as a general rule, the plaintiff's bill should show: "(1) That he has a valid legal and equitable title to the premises; (2) that he has actual possession thereof; and (3) that the defendant lays some claim thereto, stating the nature of the claim, so far as it is within plaintiff's knowledge." In the present case it appears that some claim is made on behalf of defendants. True, it is not definitely stated in the bill, but that the claim is made under the will is quite clear. When we look to the will, the extent of this claim, if any, is apparent, and that claim is to be an undivided one-fourth interest in remainder in fee to all of the 165 1-4 acre tract, but subject to plaintiff's life estate. While the infants, by their guardian ad litem do not make any specific claim, they ask that their interests be protected by the court, so to do that the court could make the claim for them. However, Ned B. Squires, their guardian, in his answer does set up their claim. It has been repeatedly held that a defective bill, not demurred to, may be aided by the other pleadings and proof, and if it appears therefrom

upon the hearings that equity has jurisdiction of the cause, the bill will not be dismissed merely because it is defective. *Ambler* v. *Warwick,* 1 Leigh (Va.) 196; *Salamone* v. *Keiley,* 80 Va. 86; *Greene & Suttle* v. *Massie,* 21 Gratt. (Va.) 356. Generally, however, if the sufficiency of the bill is challenged by demurrer, the defects in the bill are not aided by an answer. *Roberts* v. *Huntington Development & Gas Co.,* 85 W. Va. 484, 102 S. E. 93. Since no demurrer was filed by the infant defendants or in their behalf, and the bill and answer taken together clearly show the nature and extent of the infants' claim, we conclude that the circuit court had jurisdiction.

It will be observed that the real question in the case is as to the extent of the interest taken by Myrta Berry under Craven Berry's will. The will gave to his son, John P. Berry, the plaintiff, "for life and then to his children", (Russell E. Berry, Minter O. Berry, Arthur C. Berry and Myrta Berry) "now living" the upper end of the home farm. Had the testator stopped there there would be no room for construction. Thus far it is clear that he gave the plaintiff a life-estate in this tract, containing about 211 acres, with remainder in fee to his four children, of whom Myrta Berry, mother of the infant defendants, was one; so that by this provision she acquired an undivided one-fourth in remainder in fee, subject to her father's life-estate. But the testator did not stop at that point, but concluded by saying "but it is my will and desire that out of the above described land, Myrta Berry shall have one-fourth thereof according to quantity and quality to be set off by commissioners appointed by the Judge of the Circuit Court, which shall be held by her and shall be inherited by her children, if any shall be born to her, if she die without issue her portion of the land shall *desend* to her brothers."

The general intent, as disclosed by the first clause, shows that the testator desired to treat the four children of John P. Berry equally. It may be, as contended by counsel for defendants, that because Myrta Berry had lived with him for some fifteen years or more, he wanted to make better provision for her. But the other three children seem to have lived with him during this same period. There is nothing in

the will from which we can infer that Craven Berry had greater affection for Myrta Berry than he did for her brothers. She was about twenty-five years old. · He may have known that she would soon marry. He probably desired that she should have a present home site and for that reason provided that her share should be set off to her immediately; that she should not be compelled to wait until her father's death before she should enjoy her share. Therefore he provided for an immediate assignment to her of her portion. We think it clear that the testator intended that the share of Myrta Berry should be laid off to her immediately; that this could be done during her father's life, otherwise the provision for assignment by commissioners of the circuit court would be without meaning. The effect was therefore to pare down the life-estate of John P. Berry from a life-estate in the whole to a life-estate in three-fourths of the land. But was this one-fourth to be so assigned to Myrta Berry to be her full share, or was she to have a one-fourth of the three-fourths, after the death of John P. Berry? That is the real question here. As already stated, the general intent of the testator was to treat the four children of John P. Berry equally,— that is, to give them an equal share in the land. If defendant's contention be correct, then the testator gave Myrta Berry more than an equal share; the one-fourth to be immediately assigned to her and her issue would be an additional share; so that her children instead of receiving only a one-fourth in the entire tract, would receive the one-fourth or four-sixteenths assigned to Myrta Berry and then a one-fourth of the remaining three-fourths or three-sixteenths more, making seven sixteenths of the whole, while each of the three brothers would receive but three-sixteenths of the whole. We can not believe that this was the intention of the testator. We think this case is governed by the principles laid down in *Houser* v. *Ruffner,* 18 W. Va. 244, where it is stated that: "When the testator uses in one part of the will words having a clear meaning in law, and in another part words inconsistent with the former, the first words are to be cancelled and overthrown only when the two provisions are totally incon-

sistent with each other, and where the real intention of the testator can not be ascertained.''

The gift to Myrta Berry of a present life-estate in the one-fourth is inconsistent with a gift to John P. Berry of a present life-estate in the whole, and has the effect of paring down John P. Berry's interest to a life-estate in the three-fourths only. But there is no inconsistency between the two clauses as respects the remainder interests, if we hold that the one-fourth going to Myrta Berry and her issue is her full share in the entire tract; there would be an irreconcilable inconsistency as respects the remainder interests, if her issue were to receive the one-fourth of the whole and also a one-fourth of the three-fourths remaining, because the first clause gives to the four children an equal share. It may be contended that Myrta Berry herself was to have the one-fourth of the three-fourths in remainder, a vested interest, and that the interest in remainder in the one-fourth devised to her issue does not go to her, but to her issue; however, we think she is to be charged with not only her life-estate in that fourth but also with the interest in remainder devised to her issue. So that as a matter of fact she got not only a full fourth in the entire tract, but a very great advantage over her brothers in that she got the immediate right to enjoy it in possession, and in advance of her father's death; while her brothers' possession was under the will postponed until that event. It may be pointed out that the testator directs that out of the tract one-fourth shall be set off to Myrta Berry, and which land shall be held by her and inherited by her children, but if she die without issue, then ''her portion of the land'' shall go to her brothers. This clearly evidences the fact that the testator intended to limit ''her portion of the land'' to the one-fourth.

However, the defendants say that their construction of the will was as the court found in a former proceeding. By reference to another provision of the will it is seen that the testator gave to his daughter. Mrs. Floyd, for her life and then to her children, the lower end of the farm, except a one-third part thereof which he devised to his granddaughter, Georgia Wilson, for life, with remainder to her children, but if she should die without issue, then the remainder interest in the

one-third was to go to the children of Mrs. Floyd. This one-third was to be set off to Georgia Wilson in the same way the one-fourth was to be set off to Myrta Berry. Accordingly. in 1906, Georgia Wilson filed her bill in the circuit court of Braxton County against Vena Floyd, John P. Berry, Mytra Berry, and the other devisees of Craven Berry, praying for a partition of the lands so devised, and asked that her one-third part of the lower end of the farm be laid off adjacent to that of John P. Berry. She says that by said will the land was divided into two parcels by a line designated therein and "that the upper end thereof is by said will devised to John P. Berry for and during his natural life and then to his children, but it is provided in said will that the said Myrta Berry shall have one-fourth thereof," (quoting the provision for her from the will) ; after various averments, she asks that the will be construed and for a partition of the lands among the parties entitled thereto. John P. Berry answered, saying that it is true that Craven Berry disposed of his real estate as set out in the bill; he asks "to have laid off in said partition the lands devised to him by said will as well as the portion devised to Myrta Berry." He joins in the prayer of plaintiff that the will may be construed and for partition. Vena Floyd answered, admitting plaintiff's right to partition, but averred that a fair partition could not be made until the suit of the State of West Virginia against William Miller, Trustee, in which about 100 acres of the Craven Berry land is involved as forfeited is determined.

On May 26, 1906, a consent decree, signed by counsel for Georgia Wilson, John P. Berry, Myrta Berry and Vena Floyd, was entered, in which it was decreed that John P. Berry is entitled to the upper end of the home farm (described by monuments and boundaries) "for and during his natural life, with the remainder to the children of the said John P. Berry, except that Myrta Berry is entitled to one-fourth of the boundary and tract of land aforesaid, according to quantity and quality, which land shall be held by her and shall be inherited by her children, if any shall be born unto her, but if she die without issue, her portion of the land shall descend to her brothers"; the decree further provides for partition of

the land among the parties and that the 100 acres involved in the forfeiture proceeding be included as though there were no controversy in regard to it, and that the partition should be binding on all the parties until all questions in regard to the title to the 100 acres should be settled, but no longer; that the question of the final partition among the parties is reserved until the controversy over the 100 acres should be adjudicated.

On June 5, 1906, the commisioners' report of their partition was confirmed and the court found the lower end of the farm to contain 202 1-4 acres; assigned to Sarah Lurena Floyd, for life with remainder to her children, 151 acres and to Georgia Wilson 51 1-4 acres, for her life with remainder to her issue, if any, and if none survive her then to the children of Sarah Lurena Floyd. It further decreed:

> "That John P. Berry do take and hold in severalty, free from the claims of all other persons for and during his natural life, with remainder to his children, excepting the part hereinafter decreed to Myrta Berry, that part of the real estate of which Craven Berry died seized, bounded as follows: (here follows a description of the upper end of the home farm by metes and bounds) containing 219 1-2 acres. That Myrta Berry do take and hold in severalty, free from the claims of all other persons, that part of the said 219 1-2 acres described above, bounded as follows (here follows description) containing 54 1-4 acres to be held by the said Myrta Berry and decreed to her children if any shall be born unto her, but if she die without issue, the said land shall descend to her brothers."

It was further decreed that this partition should be final if the 100 acres should be found to belong to the estate of Craven Berry, but if not, then it was not to be final, but a final partition was reserved for further decree.

By decree entered in the cause on November 28, 1911, it was found that all of the 100 acre tract, except two parcels, one of 24 acres, and another of 2 acres, was waste and unappropriated land, and that a portion of the land so subjected to the demand of the state was included with the parcel allotted to Myrta Berry, and a part in that allotted to John P. Berry, and these two parties desired a re-allottment, "as to

their interests''; it was further decreed that the commissioners (the same parties as before) go upon the land heretofore assigned to Myrta Berry and John P. Berry and repartition between them the land designated by the will of Craven Berry, devised by him to said John P. Berry and Myrta Berry, assigning to each the interest in said land as heretofore directed, that is to say, to Myrta (Berry) Squires one-fourth according to quantity and quality, and to John P. Berry three-fourths of said land.''

On March 12, 1912, another decree was entered in which it. was decreed "that John P. Berry do take and· hold in severalty, free from the claim of all other parties to this suit, in lieu of land heretofore assigned him herein, the land described as follows: (here follows description) containing 134 1-2 acres; and further that Myrta Berry Squires do take and hold in severalty, free from the claim of all other parties to this suit, in lieu of land heretofore assigned to her herein, the land bounded and described as follows: (here follows description) containing 35 1-2 acres.''

The infant defendants claim that the aforesaid decrees, and especially those of May 26th and June 5th, 1906, heretofore mentioned, settled the question involved in this case; that therein the will was construed, and the plaintiff was decreed a life estate in all of the upper end of the home farm, with remainder therein to his children, except the one-fourth which was decreed to Myrta Berry for her life with remainder to her issue and that partition was had upon that basis. This is undoubtedly true. It was not only so decreed, but the plaintiff consented to that decree. It is true that the final partition was left open until an adjudication should be had as to the title to the 100 acres in litigation in the forfeiture proceeding, in order that the equities of the parties in reference thereto might be adjusted, so that in case either party should lose any of the lands assigned him in the partition suit, included in which was the whole of the 100 acre tract, it might be corrected by a new assignment; but the principles of the cause were adjudicated, the terms of the will and the rights of the parties thereunder were settled and determined, in so far as it was proper so to do in that proceeding. Now when

it was ascertained that the title to part of the 100 acre tract
was forfeited to the state, in fact about 74 acres, the plaintiff
and the defendant, Myrta Berry Squires, (she having married
since the former decree) applied to the court for a repartition
of the lands. Accordingly, the same commissioners who made
the first partition were directed to ''go upon the land hereto-
fore assigned to Myrta Berry and John P. Berry, and re-
partition between them the land designated by the will of
Craven Berry, devised by him to said John P. Berry and
Myrta Berry, *assigning to each the interest in said land as
heretofore directed,* that is to say, to Myrta Squires one-fourth
according to quantity and quality and to John P. Berry
three-fourths of the said land.'' This was done and the report
was confirmed by the decree of March 12, 1912. That decree
does not in terms limit John P. Berry to a life estate in the
three-fourths. Standing alone, it gives him a fee in the 134
1-2 acres, but should we not read that decree in the light of
the former decrees? The commissioners were to assign ''to
each the interest in said land as heretofore directed''; the
former decrees gave a life-estate, not the fee, to John P.
Berry in three-fourths, and to Myrta Berry, a life-estate and
not a fee in the one-fourth; while the last decree does not
limit their respective interests to a life estate, it can hardly
be contended that they thereby acquired a fee in their respec-
tive parcels. We do not think that this latter decree estops
the heirs of Myrta Berry Squires from asserting their rights
to their one-fourth interest in remainder in the three-fourths,
to-wit, the 134 1-2 acre tract assigned to John P. Berry, as
urged by his counsel here; but is John P. Berry, who has
since acquired the interests in remainder of his three sons, by
the former decrees, and particularly the decree of June 5,
1906, quoted in part above, wherein he was assigned, ''for
and during his natural life, with remainder to his children''
the 219 1-2 acres, less the 54 1-2 acres assigned to Myrta
Berry and her issue, estopped from asserting title in fee to
that part so assigned to him? If so, it is due to the expres-
sion,—''with remainder to his children''. Taken literally,
this of course, included Myrta Berry. But there was no con-
troversy in that suit between Myrta Berry and her three

brothers over the interest in remainder in the three-fourths or portion so assigned John P. Berry. There could be no partition of this interest in remainder between the three brothers and Myrta Berry in that suit or in any other suit so long as John P. Berry lived, because of his life-estate. A construction of the will as prayed for in the bill did not require a determination of the rights of the remaindermen in the three-fourths interest, nor was there any pleading warranting the court in passing upon that question. In fact, it did not do so, though under the broad language of the decree quoted above it might be inferred it did. We say it did not do so, because this matter was not in controversy. As between the parties here who were before the court there, either in person or by representation, there were but two matters arising under the will determined,—first, that Myrta Berry was devised a life estate in one-fourth with remainder to her issue and, second, that the remaining three-fourths was given to John P. Berry for his life, with remainder to his children. While the decree adds: "with remainder to his children", there was no issue upon that point and we do not see how such an issue could have been raised there. We therefore hold that the decree in that case is not res adjudicata, except as to the issues there decided. Upon the question as to the extent of plaintiff's life-estate it is a final determination. It was there decided he had a life-estate only in the three-fourths; it is also final in so far as it assigned to Myrta Berry a one-fourth for life with remainder to her issue. It severed the interests in so far as it was proper or necessary to a decision in that case; but it did not determine whether Myrta Berry or her children did or did not have an interest in remainder in the three-fourths. John P. Berry is therefore not concluded by the decrees in that case; nor are the children of Myrta Berry Squires.

Therefore, since John P. Berry has acquired the interests in remainder of his three sons in the tract so assigned to him for life, and defendants have no interest therein, the circuit court did not err in cancelling defendants' claim as a cloud upon plaintiff's title, and we affirm the decree.

*Affirmed.*