## Lindenberger et al. v. Kentucky Title Trust Co. et al.

(Decided Nov. 12, 1937.)

580

GORDON, LAURENT, OGDON & GALPHIN for appellants.

CRAWFORD, MIDDLETON, MILNER & SEELBACH for appellees.

'OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

G. L. Lindenberger, Sr., died testate in Louisville, Ky., on October 4, 1927. By his will he created certain trusts as well as remainder interest in his devised property, some of the beneficiaries of which were and still are infants and they compose a part of plaintiffs in this declaratory judgment action which was filed in the Jefferson circuit court against Lindenberger's trustee and all other parties having an interest in the subject matter involved. The time for the termination of the involved Lindenberger trust, under the latter's will, is not definitely fixed, but is made contingent upon the happening of events which are certain to occur at some unknown time, but in no event is it in violation of the rule against perpetuities.

The Pendennis Club in the city of Louisville is a social corporation organized without profit. It owned property on the south side of Walnut street in that city and between Third and Fourth streets, the western line of which was at the rear of a large business building, occupied by the Stewart Dry Goods Company, and is located on the lot in the southeast corner of the junction of Walnut and Fourth streets. It also owned a one-half undivided interest in a 20-foot lot fronting on Fourth street and immediately adjacent to the Stewart Dry Goods Company building north of it. In the early part of 1928 the club mortgaged its property to secure $675,000, for the payment of which it issued its bonds running through a series of years, and the trust deed or

mortgage that it so executed named the Louisville Trust Company as trustee for its bondholders. The trustee therein later became financially involved and was reorganized. A part of the plan for such reorganization was the taking over by the Kentucky Title Trust Company of certain assets of the Louisville Trust Company, and the Kentucky Title Trust Company thereby became, under that arrangement, trustee under the Lindenberger will, as well as trustee for all of the assets transferred to it by the Louisville Trust Company, the latter having theretofore also been appointed and acting as trustee under the Lindenberger will.

Prior to December 31, 1931, the Kentucky Title Trust Company, as trustee in the Lindenberger trust, acquired and became the owner of $275,000 worth of the Pendennis Club bonds, the remaining $400,000 being owned by the Louisville Trust Company, but which was later transferred to the Kentucky Title Trust Company as pointed out above. Following that, and pursuant to possessed authority therefor, it as Lindenberger trustee surrendered the bonds owned by that trust in consideration of the Pendennis Club conveying to it the title to certain of its properties, including the one-half undivided interest it owned in and to the 20-foot lot fronting on Fourth street above described. That is the condition of the title to the real estate here involved at this time. The other $400,000 indebtedness of the Pendennis Club was also arranged for by the issuing of new funding bonds to that amount, and a holder of one of them (H. W. Russell) is likewise a party in this litigation in his own capacity and as representative of other owners of bonds of the same issue, as well as owners of other bonds secured by the trust which the Kentucky Title Trust Company took over from the Louisville Trust Company under the reorganizing agreement hereinbefore mentioned.

The real estate here involved (consisting of vacant lots on the south and east of the Stewart Dry Goods Company building) is practically nonproductive of income, yielding only about $1,100 net, accruing from rentals as parking spaces for automobiles. The Stewart Dry Goods Company proposed to lease it for a period of 15 years, with the right of renewal for another 15 years, and to utilize the property by improving it so that substantial income from rentals would be received by its owners. The proposition was agreed

**582**

to by all parties interested; but there existed some doubt as to whether the Lindenberger trustee had the authority to enter into such an agreement, and also, whether the Kentucky Title Trust Company possessed such authority, under its other trusteeship of a vast amount of bonds that it took over from the Louisville Trust Company in the reorganized arrangements of the latter's affairs hereinbefore referred to. The doubt as to the authority of the Lindenberger trustee to execute the proposed lease is based upon these facts, (a) that the proposed Stewart Dry Goods Company lease, if it should exercise its option to renew it after the first 15-year term, would, possibly, extend beyond the termination of the Lindenberger trust, and (b), even if not so, then the Lindenberger will did not by express terms confer authority on the trustee of the trust thereby created to "lease" real estate that the testator did not own at the time of his death, it being remembered that the real estate here involved was acquired by that trustee after the testator's death, but under power and authority conferred by the Lindenberger will. The trial court interpreted the instruments involved and adjudged the rights of the parties so as to uphold the right of both the Lindenberger trustee, and that of the Kentucky Title Trust Company, as successor of the Louisville Trust Company for various bondholders, to execute the proposed lease, and this appeal by the plaintiffs below from that judgment is for the purpose of obtaining from this court a review thereof.

In disposing of fact (a), a suggested reason why the Lindenberger trustee is without authority to execute a lease that might possibly extend beyond the termination of the trust created by that will, it may be said generally that trusts are peculiarly institutions of equity, and it is now and always has been the cherished policy of that branch of jurisprudence to so construe them as to carry out the intent and purpose of their creator. The language of the Lindenberger will, in creating the trust therein made, is of a very sweeping nature, as it relates to the conferring of authority on the trustee for the benefit of the cestuis que trust. It is a lengthy document and authorizes the trustee to convert, convey and reinvest the trust funds within its sound business discretion, which are owned by the testator at his death, and it was in pursuance of such authority that the real estate involved was obtained by

the trustee. Another provision of the will authorized the trustee to also "lease" any real estate then owned by the testator, and in still another provision the trustee was vested with authority to also sell, mortgage, or convey any future acquired real estate that might be obtained in carrying out the provisions of the trust. However, in that last provision the word "lease" was not employed though it was done with reference to real estate that the testator owned at the time of his death. Clearly, the purpose of the testator, in the creation of the trust which he provided in his will, should not be so interpreted as to confine the authority of the trustee to "lease" only real estate that was owned by him at the time of his death, and to withhold the right to lease after-acquired real estate which it is clear, by viewing the language of the will throughout its contents, was intended by the testator to be managed and controlled in the same manner as real estate owned by him during his lifetime. He clearly intended to put the entire management and control of all items of the trust property on the same basis, but by oversight, no doubt, neglected to insert the word "lease" when dealing with after-acquired real estate as a part of the trust fund that he created. His dominant purpose, as clearly manifested by his will, was to authorize and enable his trustee to realize profit for the beneficiaries, and a clearly expressed attempt was made by him to vest his trustee with all necessary businesslike discretion in the management of the trust property so as to accomplish that purpose. He could not and did not foresee the creation of a possible situation whereby that purpose might be thwarted, and for that reason he failed to make express provision against all possibilities whereby it might be done; but we think the clearly manifested general purpose is sufficient to overcome the failure to so expressly provide. We therefore conclude that fact (a) should not be given the effect of limiting the authority of the trustee to lease after-acquired real estate by it or him.

We also conclude that fact (b) should likewise be denied that effect, as the trial judge also adjudged. It is true that as a general principle many courts have held that a trustee could not encumber the trust property with a lease extending beyond the termination of the trust; but in every one of them there was nothing in the trust instrument whereby such an authority could be found as possessed by the trustee, and where

to uphold it would be in direct conflict with the plainly expressed purpose that it should not be done. But courts—especially in later years—in an effort to carry out the intention and purpose of the creator of the trust, have departed to some extent from that unbendable rule of interpretation, under circumstances and conditions that to deny the authority in the trustee would obstruct and defeat the purposes of the trust. Here we have the situation that the trust property, though vastly valuable, is yielding in its present condition but little more income than is necessary to pay taxes. To carry out the proposed leasing scheme would convert it into paying trust property, and in no conceivable way or manner would it or could it imperil in the least the value of the trust property, either now or hereafter, or conflict with any of the trust provisions. On the contrary, the proposed improvement to be acquired through the operation of the proposed lease, according to all rules of economics, will greatly enhance the interest of the equitable owners. In such circumstances courts have held that the evident purpose of the creator of the trust should prevail; and that under facts like those prevailing here the language of the trust instrument should be liberally interpreted so as to empower and authorize the trustee to lease the trust property for a reasonable term, notwithstanding it might extend beyond the period of the trust.

Hence, this court in the case of Marshall's Trustee v. Marshall, 225 Ky. 168, 7 S. W. (2d) 1062, 1063, 61 A. L. R. 1365, sustained the authority of the trustee to execute such a lease under facts almost identical to those appearing in this case, and which appear in and may be gathered from a reading of that opinion. The foundation for that interpretation was stated by us in this language: "As the trustee is given full power to hold, exchange, invest, reinvest, sell, and convey the property, plainly it may make a lease which is only a sale of the property for the term of the lease. The greater under the broad powers conferred by the will includes the less. The trustee here is given power to sell and convey absolutely any part of the property, and, if it sold the Fourth street property under this power and bought another lot on Fourth street subject to a 99-year lease plainly it could not be said that it had exceeded its power. The testator clearly intended to give this broad power to the trustee, for he added the ad-

visory committee to advise with it, and upon the whole will it is clear that the chief objects of his bounty, for whom he intended to provide, are his wife, and his son, and that the main object in creating the trust was their protection." The opinion finally concludes: "It was the plain purpose of the testator to confer on the trustee full power in the management of the estate for the best interests of the beneficiaries of the trust."

As an original proposition we still think the determination reached in that opinion was and is sound and should not be departed from. We therefore conclude that neither fact (a) nor (b) creates an obstacle in the way of the Lindenberger trustee making the proposed lease to the Stewart Dry Goods Company.

We also concur in the conclusion of the chancellor that the Louisville Trust Company and its successor, Kentucky Title Trust Company, has the right to execute the lease under the instrument creating their interest in and to the proposed leased property; and largely for the same reasons advanced supra in considering and determining the power and authority of the Lindenberger trustee to do so. But, in addition thereto, their title paper contains this provision: "This Indenture may be modified to such extent as may be agreed upon in writing by the Company (The Louisville Trust Company), the Trustee and the Registered Holders of a majority in principal amount of the notes issued hereunder and outstanding at the time of such modification."

The necessary agreement for a modification of the trust indenture creating the trust interest has been duly entered into and if, perchance, the original unmodified indenture was not broad enough in its language to confer authority on the trustee to execute the proposed lease, then its terms have become expanded by agreement made under the excerpt taken therefrom so as to confer such authority, and that it now has authority to do so, since such authorized modification of the indenture removed all doubts that might have theretofore existed.

Wherefore, for the reasons stated the judgment is affirmed; the whole court sitting.