# IN THE MATTER OF THE ESTATE OF JAMES CAMPBELL, DECEASED.

## NO. 2951.

Argued March 24, 1954.    Decided June 17, 1954.

Towse, C. J., Le Baron and Stainback, JJ.

OPINION OF THE COURT BY LE BARON, J.
(Stainback, J., dissenting.)

This is a bill for construction of will and in the alternative for authority to deviate brought by the trustees under the will of James Campbell, deceased. By amended petition the trustees pray that the court of equity construe the will to determine whether they have power with respect to certain lands of the trust to execute valid leases for the definite term of fifty-two years, irrespective of a prior termination of the trust, and if the will be construed as not

giving them such power, that an authorization be granted permitting them to deviate from the will, so construed, by executing such long-term leases for those lands. At this juncture, it is pertinent to note that the residential lands of the testator were not made subject to the trust by the will and that the trust itself as to the trust realty is of uncertain duration ending twenty years after the death of the survivor of the testator's four children, only two of whom are now living, aged sixty and seventy years, respectively. But the probable duration, based on mortality tables as to the life expectancy of the younger of those two children and the final twenty-year period of the trust, is thirty-four years which nevertheless is indeterminate because the life of the trust might be considerably shorter or longer in duration. After a hearing the chancellor out of deference to two prior decisions of this court in *Campbell* v. *Kawananakoa*, 31 Haw. 500 and 34 Haw. 333, declined to construe the will on the ground that those decisions are res judicata of the question of construction as set forth in the amended petition. On findings of fact, however, he concluded that the case is an appropriate one for deviation from the will as construed in those prior cases. Accordingly, he entered a decree authorizing the trustees to execute the proposed leases. From the decree granting such authority, the appellants, as life beneficiary and contingent remainderman, respectively, appeal. The other respondents as the remaining beneficiaries and remaindermen joined in the prayer of the trustees and are satisfied with the decree.

The specification of alleged errors on which the appellants rely for a reversal of the decree on appeal presents two main questions of law, the second being dependent on a determination of the first. The first pertains to the two prior decisions of this court in *Campbell* v. *Kawananakoa*, *supra*. It is whether those decisions are res judicata of the

question of construction as set forth in the amended petition. If that question be answered in the affirmative then the will need not be further construed and the second question arises. But if it be answered in the negative, the second question would arise only if the will be construed the same as in those prior decisions; otherwise, it would not be judicable. This is evident from the fact that the second question pertains solely to the alternative question of deviation from the will as construed in such decisions and runs to the sufficiency of the evidence to warrant the deviation. It is whether this case is an appropriate one for that deviation. Material to the first question presented on appeal as well as to the second are the chancellor's findings on which he based his decree. Those findings are further material to the two questions set forth in the alternative by the trustees in the amended petition. For a proper understanding of the case, therefore, such findings are made a part of this opinion.

The findings in full are: "(1) That the trustees have in the estate certain marginal lands not suitable for the major agricultural enterprises of the Territory but which are well suited for potential residential, commercial, industrial, piggery and small farm purposes; (2) That the lands in question at present are either non-income producing or yield a relatively low income; (3) That there is a pressing demand for the utilization of these lands but that demand cannot be fulfilled unless the trustees are in a position to grant leases for a term in excess of 51 years; (4) That few prospective tenants are interested in the leasing of said lands unless they can secure adequate financing and this cannot be done without a lease for a term in excess of 51 years; (5) That in order to secure adequate rentals for the lease of said lands either for residential, commercial, industrial, piggery or small farm purposes as the case may be, it is necessary that the trustees

execute long term leases so that lessees will have a term of years within which to amortize improvements erected by them on the demised premises and to comply with conditions for the obtaining of financing through the Federal Housing Authority among which is a requirement that a lease of real property will not be approved for Federal Housing Authority financing unless it is for a term in excess of 51 years; (6) That the estate of James Campbell is at a competitive disadvantage with other landowners on the Island of Oahu who are able to and uniformly do grant leases of terms in excess of 51 years; (7) That the will of James Campbell directs that the real estate 'shall be particularly and especially preserved intact, and shall be aliened only in the event, and to the extent, that the obvious interests of my Estate shall so demand' and accordingly the trustees are in the dilemma of either holding relatively unproductive land or selling it unless they secure the approval of the Court for long term leases; (8) The conditions that existed at the date of the death of James Campbell have materially changed and the present urban development of Honolulu could not reasonably have been anticipated in 1900; (9) That the will of the testator vests full power of management and discretion in his trustees and provides, among other things, in the Twelfth Article: 'It being my purpose herein to provide a safe and certain income and maintenance for my wife, our children and grandchildren, for and during the period of the trusts hereby established, . . . and that the Trustees herein named, and their successors in trust hereunder, shall keep intact my Estate, and administer the same under the name of "The Estate of James Campbell" . . .'; (10) That it is to the best interests and benefit of the beneficiaries of said estate (both income takers and contingent remaindermen including those unborn) that the trustees have and exercise the power to execute leases for such terms that will be

valid notwithstanding the prior termination of the trust, [and] based upon the [ten] findings as above set forth it is the determination of the chancellor [11] that the granting of authorization to the trustees to execute leases for a definite term of 52 years, notwithstanding the prior termination of the trust, is necessary in order to make the lands in question properly productive and for the protection of both the income of the income takers and the assets of the remaindermen, and will be a definite and certain benefit to all the beneficiaries, and [12] that such deviation is in accordance with the cardinal objectives of the testator."

On review of the record, this court finds no reason to disturb any of the above findings of fact or any of the conclusions and inferences drawn therefrom by the chancellor aside from his final conclusion as to deviation. He, as the trier of fact, was in a better position to pass upon the credibility of the witnesses and to weigh their oral testimony than is this court. His findings, resting as they do upon the credibility of witnesses and the weight of their oral testimony as well as involving the consideration of opinion evidence, are entitled to great weight. Where, as here, the essential facts underlying those findings, conclusions and inferences are largely undisputed and the overwhelming weight of substantial evidence supports them, this court not only will not set them aside but adopts them as its own.

The doctrine of res judicata, broadly speaking, is but the technical formulation of the "Public policy * * * that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest; that matters once tried shall be considered forever settled as between the parties." (*Baldwin* v. *Iowa State Traveling Men's Ass'n*, 283 U. S. 522, 525, 75 L. Ed. 1244.) Within the framework of a trust, however, the doctrine as an embodiment of public policy does not require a holding

that a construction of a will to define the powers of a trustee toward distinct property of the trust once made should never be questioned and corrected, if found to be erroneous, in the future administration of the trust with respect to different property, but must remain unchangeable like the law of the Medes and Persians. If it did so require, the consequence in a long-enduring trust would be that because one piece of trust property had been dealt with at the inception of the trust by an error of construction, all the other pieces thereafter must be likewise dealt with for the entire life of the trust. That consequence would set that trust apart from other trusts under like wills, correctly construed, and be violative of the testator's true intent as well as of judicial duty for, as stated in the early case of *Kerlin's Lessee* v. *Bull,* 1 Dall. 175, 1 L. Ed. 88, by Chief Justice McKean, speaking for the Supreme Court of Pennsylvania, "A court is not bound to give judgment, which had been given by a former court, unless they are of the opinion that the first judgment was according to law; for any court may err; and if a judge conceives that a judgment given by a former court is erroneous, he ought not in conscience to give the like judgment, he being sworn to judge according to law." But the doctrine does render the effect of a decree in construing a will as to the disposition of a particular piece of trust property final and conclusive between the parties and their privies as to that disposition. An issue of construction with respect to a distinct piece of property is conclusive against relitigation, if, but only if, it has been litigated and its determination necessary to the decision. For example, a prior construction is final and conclusive only as to the particular fund before the court in a former action. (*Strout* v. *Chesley,* 125 Me. 171, 132 Atl. 211; *Megrue* v. *Megrue,* 247 N. Y. S. 95, 231 App. Div. 245; *In re Kellerman's Estate,* 242 Pa. 3, 88 Atl. 865.) To the same effect a prior construction

with respect to certain lands is not conclusive as to different lands. (*Malone* v. *Schwing,* 101 Ky. 56, 39 S. W. 523; *Brock* v. *Conkwright,* 179 Ky. 555, 200 S. W. 962; *Corse* v. *Chapman,* 153 N. Y. 466, 47 N. E. 812; *Hotaling* v. *Marsh,* 132 N. Y. 29, 30 N. E. 249; *Handy's Estate,* 314 Pa. 61, 170 Atl. 277.) Thus a trustee whom a court of equity has instructed for his guidance and protection as to his course of action under the will with respect to certain property of the trust cannot again be drawn into controversy with the beneficiaries over the meaning of the will in challenge of his authority for taking that course of action with respect to that property. Nor can the beneficiaries be again drawn into controversy thereover with the trustee in justification of his refusal to take that course of action, all those matters having been conclusively determined as between the parties and their privies. But by matters so determined is to be understood the material facts or questions in issue and there admitted or judicially decided. The proper approach to the question of res judicata now before this court, therefore, is to compare the material facts or questions in the two prior *Campbell* cases with those in the instant *Campbell* case.

The first *Campbell* case, 31 Haw. 500, decided in 1930, was "a suit in equity instituted by the trustees * * * for the purposes of securing a construction of the will in so far as the same may be necessary to determine the [precise constructional question] set forth in the bill" in regard to certain lands of the trust. The pleadings clearly limited the issues to those lands and required that the will be construed with respect to them. The question sought to be determined was in substance whether the trustees had the power under the will to make valid leases of such lands for a term of fifty years which would "not [be] subject to termination by reason of the termination of the trust within said fifty (50) year term." In answering that question

in the negative, the provisions of the will as to the powers and duties of the trustees to manage the realty of the trust and to produce therefrom "a safe and certain income" were construed to imply "the power to lease lands" but it was the opinion of the court "that no lease can be granted whose term is to extend beyond the termination of the trust [and that] any excess beyond the end of the trust period will be void." That opinion as an authoritative holding, however, is limited to the facts of that case and applies only to the particular lands involved by the question determined. In so far as its broad language might be inferred to be a construction of the will with respect to other lands, the construction to that extent is not germane to that question. No pleading warranted such a construction. Nor was it litigated or necessary to the decision. It, therefore, is mere dictum and does not stand in the way of the trustees in procuring further instructions as to a construction of the will in regard to those other lands whenever the occasion may thereafter arise to seek judicial guidance and protection in the administration of the trust. Consequently, the first *Campbell* case in construing the will is not res judicata except as to the precise question and issues there decided. (See *Berry* v. *Squires,* 95 W. Va. 713, 122 S. E. 165.)

The second *Campbell* case, 34 Haw. 500, decided in 1937, was a suit in equity instituted by the trustees "for the purpose of obtaining a judicial decree validating [two separate, leases of the identical lands involved in the first *Campbell* case] for their full term [of fifty years] even though the trust should terminate prior to the expiration of this term." The ground for validating those leases as sought by the trustees was that of deviation primarily under the provisions of statute empowering a circuit judge at chambers in equity, "if it appears to be for the benefit of the trust estate, [to] direct the trustee or trustees to

lease or extend the terms of leases of the real property for such periods as may be deemed advantageous to the estate [and providing that] any lease or extension of lease made under such authority or direction shall continue in force for the full period so authorized notwithstanding the trust shall have terminated." (R. L. H. 1935, § 4712 which is Act 92, S. L. H. 1929 as amended by S. L. H. 1933, c. 194, § 1, since the first *Campbell* case was decided.) The trustees presumably proceeded on the theory that the rule adopted as case law in the first *Campbell* case had been reversed by statute. Consistent with that theory, they obtained a decree validating those leases in deviation from the will as construed in that prior case. The deviation as authorized by the decree, however, rested on substantially the same facts as those upon which the will had been construed but reached the opposite result with respect to the identical lands. Accordingly, on appeal, this court in confirming its prior construction not only rejected the theory of the trustees but reversed the subsequent decree. But the authoritative holding in the second *Campbell* case as that in the first *Campbell* case is limited to facts which are substantially the same in both of those related cases.

The constructional question as presented by the trustees in the instant *Campbell* case is comparable in form to the constructional question dealt with in the two prior cases. But it is disparate in substance therefrom, the two questions differing in essential import and subject matter from each other. It was the substance of each question, however, not its mere form, which the parties litigated when the particular question arose under the pleadings as the issue necessary to each decision and with which the doctrine of res judicata is concerned. Consequently, a decision on one is not conclusive of the other as evident from the contrast in the underlying facts and circumstances.

To illustrate this contrast a few of the obvious differ-

ences will be noted. The chief distinction between the material facts in the two prior cases and those in the instant one is that not only different lands are involved but lands diverse in character. Because of that distinction each set of lands has been affected differently by various changing conditions and circumstances, which have arisen since the trust was created and which resulted in their becoming subjects of long-term leases at different stages of the trust. The lands in one set are in the main agricultural lands which have developed into highly productive and fully developed pineapple and sugar lands until their yield is higher than average for that character of lands in the Territory. They constitute the major portion of the trust realty and the source of most of the estate's revenue. In contrast the lands in the other set are in the entirety marginal and barren lands which have remained in status quo but by reason of recent urban development have been rendered suitable for productive purposes profitable to the estate. They constitute but a small fraction of the estate and to date have added little to its income. Such contrasts give rise to a host of divergent problems and considerations in administering the trust under the will.

The probability that the long-term leases would expire within the trust period was far stronger in the prior cases than it is in the instant case. Consequently, there was considerably less occasion for extending the leases beyond the probable life of the trust as well as considerably less advantage to the estate in rentals to be gained therefrom in the prior cases than there is in the instant case. Nor did the Federal Housing Authority affect the financing of the prospective lessees in the prior cases as it does in the instant case. The marked difference between what appeared to be a lack of any real need for so extending leases with respect to one set of lands and what is proved to be an urgent need therefor with respect to the other stems not

only from the substantial difference in years between the two stages of trust but from the diverse characters of the lands involved, the lands in one set continuing to be highly productive whether the leases were made terminable with the trust or valid for their full term even though it might extend beyond the life of the trust as a remote possibility and those in the other remaining idle or relatively unproductive unless they are validly leased for a definite term of fifty-two years without regard to the strong probability that the trust would terminate within that term. From these differences of consideration, it is understandable that "the elementary principle, laid down in textbooks and decisions, that a leasehold, in the absence of some reason for doing so, may not extend beyond the quantity of estate held by the lessor" lent itself readily as a convenient solution of the then-existing problem in the prior cases and yet affords no solution to the now-existing problem in the instant case. (*In re Hubbell Trust*, 135 Ia. 637, 113 N. W. 512.) Nor is it strange that such principle as a mere rule of construction was resorted to in the prior cases to deny the exercise of the implied power to lease in so far as the term might extend beyond the duration of the trust with respect to the lands involved at that stage of trust but would not be resorted to in the instant case wherein the exercise of that power may be reasonable with respect to different lands at a later stage of trust. This is brought into bolder relief by further differences of consideration.

Long-term leases extending beyond the probable duration of the trust were not necessary in the prior cases as an alternative to a sale and hence the power to execute them was not considered to be within the express power to alienate as the leases are and the power to execute them should be considered in the instant case. Other differences of consideration lie in the provisions of lease. The leases in the prior cases provided for no renegotiation of rentals

whereas in this case the decree requires that the rentals be subject to renegotiation after the expiration of the first twenty-five year period of the proposed leases and again after the expiration of a forty-year period and further provides that those rentals may be subject by the trustees within their discretion to more frequent intervals for renegotiations. Furthermore, it appeared to be doubtful in the second *Campbell* case whether it would be ultimately beneficial to the contingent remaindermen at the termination of the trust for them to have the productive lands of the estate as the great bulk of their inheritance incumbered by the unexpired leases at fixed rentals in the sense of not being renegotiable whereas in this case no such doubt appears, the right to enjoy those lands being unrestricted and otherwise idle or relatively unproductive being saved from alienation and at the same time rendered productive and more valuable through unexpired leases, the rentals of which the remaindermen themselves will have enjoyed for a substantial period of the lease as beneficiaries of the trust and may renegotiate after termination of the trust during the balance of the leases as successor lessors. No further comparisons are necessary to underscore the diversity between the subject matters litigated or to demonstrate that no relitigation of the same material facts or questions is involved. Suffice it to say that the first question as to res judicata is answered in the negative. Both sets of parties before this court, therefore, are entitled to have it construe the will in determining the appeal as to whether the trustees have power to execute long-term leases for the particular lands in question.

The will expresses no prohibition whatsoever against leasing lands of the trust or against leasing them for a term beyond the duration of the trust. On the contrary, it is silent on the entire subject of leases. It is only when the will as a whole is construed in relation to its provi-

sions as to the powers and duties of the trustees toward the trust realty that by necessary implication the testator's intention becomes clear as to the power to lease and as to the manner of its exercise.

The will, so construed, makes it incumbent upon the trustees in plain and unambiguous language "to hold, manage, control, preserve, and direct [the trust realty], to collect all rents, issues, profits, income and revenue thereof, * * * to provide [from it] a safe and certain income and maintenance for my wife, our children and grandchildren, for and during the period of the trust hereby established, [to] keep intact my estate * * * the realty thereof [to] be particularly and especially preserved intact [so that it] shall be aliened only in the event, and to the extent that the obvious interests of my estate shall so demand."

The powers to hold, manage, control, preserve and direct the trust realty as conferred upon the trustees by the will are broad in scope and character. They are coupled with imperative duties to keep that realty intact and to produce and collect from it a safe and certain income. The evident purpose of the testator in regard to those powers and duties is that they be exercised for the best interests of the beneficiaries in order that there shall be produced during the entire period of the trust as safe and as certain an income as good husbandry and prudent management reasonably can attain. He patently sought to procure for the cestui que trust the full benefit of income which the trust realty is reasonably capable of producing under the wisdom and guidance of his trustees. Nor does the power to alienate trust realty as conferred by the will operate to conflict therewith. On the contrary, it is a discretionary power to be exercised "only in the event, and to the extent that the obvious interest of my estate shall so demand" which means nothing more than that the

power is to be exercised when it becomes clear to the trustees that it would be for the best interests of the beneficiaries to sell rather than to hold for income-producing purposes. Thus every power and duty as conferred and imposed by the will is interrelated with each other and must be reasonably exercised to further the interests of the estate. That such mandate be carried out is the paramount intention of the testator. Supplementing and amplifying that intention as to the persons who are the objects of his bounty and as to when they are entitled to it are the provisions of will with respect to the order of succession for the beneficiaries to receive income and with respect to the duration of the trust which clearly indicates that the testator contemplated a long-enduring trust albeit one of indeterminate life.

In further considering the wide scope of power conferred by the will, it is evident that the testator intended to clothe the trustees with all the power which he possessed and which he might, if living, probably exercise in case of conditions making it advisable from a business standpoint. That power is practically unlimited other than to be within the confines of an exercise which is reasonable in furtherance of the best interests of the estate. Having the express power to sell to the extent that "the obvious interests of my estate shall so demand," the trustees to the same extent plainly have the power to make a lease which is a possessory sale of less than the whole interest. In correlation, the power to alienate as a sale of both title and possession carries with it the power to lease as a sale only of possession, even though the tenancy created thereby may extend beyond the probable duration of the trust. To that broad power of alienation, the legal maxim is applicable that "The greater contains the less," i.e., *Omne majus continet in se minus.* For example, a power to lease for ninety-nine years has been held to be within the greater

power to sell in construing comparable wills which conferred powers not so broad as those conferred by this will. (*Marshall's Trustee* v. *Marshall*, 225 Ky. 168, 7 S. W. [2d] 1062, 61 A. L. R. 1365; *Estate of Gray*, 196 Wis. 383, 220 N. W. 175.)

The application of the above-stated maxim as a rule of interpretation governs in ascertaining the testator's intention from the whole will, attributing weight to all its language. For instance, that application achieves a result which is consistent not only with the interplay of express powers and duties to hold, preserve and keep the realty intact and to produce and collect from it the required character of income, but under the particular facts of this case with the best interests of the estate which the paramount intention of the testator requires to be served. Nor can those powers be properly and fully exercised and those interests served with respect to the lands in question unless the trustees are empowered to lease them for a definite term extending beyond the probable duration of the trust. The power to lease for such a term thus not only implements express powers and duties and makes them effectual but operates as a reasonable execution of the trust itself in carrying out the paramount intention of the testator. It is evident therefrom as well as from the broad power of alienation that by necessary implication the trustees have the power to so lease. That implied power, however, is subject to the same limitations and requirements as those to which the express powers are subject. To the same extent as they are, it is exercisable so long as the authority of the trustees continues for the full life of the trust and must be exercised reasonably for the best interests of the estate in the light of all the facts and circumstances in any particular case. When so exercised it not only serves those interests but as an alternative to a sale operates more advantageously to the remaindermen in whom title vests at

the termination of the trust than would have been the case had title been divested by exercise of the greater power to alienate.

Under similar facts and circumstances, courts have liberally construed like wills as to comparably broad powers of control and management to imply the power to execute long-term leases extending beyond the probable life of the trust and have done so even where the will confers no power to sell. (*Russell* v. *Russell,* 109 Conn. 187, 145 Atl. 648; *Montgomery Ward & Co.* v. *Norton's Trustee,* 255 Ky. 244, 73 S. W. [2d] 41; *Upham* v. *Plankinton,* 152 Wis. 275, 140 N. W. 5. See *In re Hubbell Trust,* 135 Ia. 637, 113 N. W. 512.)

This court recognizes a conflict in the authorities as to general powers of trustees but believes the better rule permits trustees to make leases beyond the periods of their trusts if in so doing they give effect to the scheme and intent of the trustor. The position taken here accords with the statutory rule for extending leases for trust property. (See R. L. H. 1945, § 12573.) Moreover, the soundness of that position both as to the law and the facts of this case could not be better expressed than was done in the analogous case of *Lindenberger* v. *Kentucky Title Trust Co.,* 270 Ky. 579, 110 S. W. [2d] 301 at pp. 303, 304, by the following language: "It is true that as a general principle many courts have held that a trustee could not encumber the trust property with a lease extending beyond the termination of the trust; but in every one of them there was nothing in the trust instrument whereby such an authority could be found as possessed by the trustee, and where to uphold it would be in direct conflict with the plainly expressed purpose that it should not be done. But courts—especially in later years—in an effort to carry out the intention and purpose of the creator of the trust, have departed to some extent from that unbendable rule of inter-

pretation, under circumstances and conditions that to deny the authority in the trustee would obstruct and defeat the purposes of the trust. Here we have the situation that the trust property, though vastly valuable, is yielding in its present condition but little more income than is necessary to pay taxes. To carry out the proposed leasing scheme would convert it into paying trust property, and in no conceivable way or manner would it or could it imperil in the least the value of the trust property, either now or hereafter, or conflict with any of the trust provisions. On the contrary, the proposed improvement to be acquired through the operation of the proposed lease, according to all rules of economics, will greatly enhance the interest of the equitable owners. In such circumstances courts have held that the evident purpose of the creator of the trust should prevail; and that under facts like those prevailing here the language of the trust instrument should be liberally interpreted so as to empower and authorize the trustee to lease the trust property for a reasonable term, notwithstanding it might extend beyond the period of the trust."

From its four corners, the will in this case clearly so empowers the trustees. In addition, it provides the key as to the testator's intention for the disposition of the particular lands involved within the power to alienate them. That key is to be found in the event that and to the extent which the obvious interests of the estate require the exercise of that drastic power or of those less drastic powers carried with it, *i.e.*, ones to lease for terms of varying character and length. The trustees thus have a wide choice of action but must be guided by the dictates of those interests as the flexible standard or criterion set up by the testator for the exercise of those powers. In administering the trust they are required to ask themselves the question whether such interests demand that the particular lands

in this case be allowed to remain idle or relatively unproductive, be leased for a very short term, be leased for an uncertain one terminating with the trust, be leased for a definite term of fifty-two years, or be sold? To state that question in the light of the facts is to answer it. This is true because it is patent therefrom that out of all possible alternatives for the disposition of the property the proposed leases for the definite term of fifty-two years are the most advantageous to the estate and the only ones which further its best interests. Corroborative thereof is the fact that the execution of those leases constitutes a reasonable exercise of the implied power to lease, the term being not only a reasonable one but the one best adapted to produce income for the benefit of all the beneficiaries as well as being in accord with local custom for the leasing of lands of like character. In brief, the obvious interests of the estate within the meaning of the will demand that such a disposition be made as an imperative duty. Thus is revealed the true intention of the testator as applied to the facts of this case. Accordingly, the will is so construed to effectuate that intention.

In answering the constructional question before it in the affirmative, as it does, this court points out that its construction of the will with respect to the lands involved by that question does not extend to an increase or decrease in the powers and duties which the will confers upon the trustees but merely to a clarification of them. No further advice is sought by the trustees and their alternative question of deviation does not arise. Nor is it judicable. The chancellor therefore should have declined to answer it rather than the question of construction. The error, however, is a harmless one, the result of the decree being correct in authorizing execution of the proposed leases which under all the facts and circumstances of this case constitutes a reasonable exercise of the implied power to lease.

Decree affirmed.

*J. H. Hughes* (also on the briefs) for appellants Alice Kamokila Campbell and Helen Kala Macfarlane.

*J. G. Anthony* (*Robertson, Castle & Anthony* on the brief) for trustees Campbell Estate, appellees.

*D. C. Lewis* (*Lewis, Buck & Saunders* on the brief) for appellees Kapiolani Campbell Field, Liliuokalani Kawananakoa Lee and Abigail Kekaulike Kawananakoa.

*R. E. Stifel* (*Anderson, Wrenn & Jenks* on the brief) for appellees Beatrice A. King et als.

*M. D. White,* guardian ad litem, filed a brief but was not present at argument.

### DISSENTING OPINION OF STAINBACK, J.

While realizing that dissenting opinions are futile and usually of little value, I cannot join with the majority of this court in their holding that the trustees of the Campbell Estate can *under terms of the will* make a binding lease for a period longer than the duration of the trust.

Not only has this court twice held that the *will* of the testator, James Campbell, *did not empower* the trustees of their own volition to execute leases that would be binding beyond the termination of the trust, but the trustees themselves have on at least one occasion formally admitted that the will of the testator did not empower them to execute such leases; and apparently at the time of the filing of the original petition they were of the same opinion as the original bill was a petition to deviate from the terms of the trust created under the will and only by the amended petition did they suggest that the trustees might have power *under the terms of the will* to execute leases to extend beyond the duration of the trust. *"It is conceded by the trustees that the will of the testator did not empower them of their own volition to execute leases that would be binding beyond the termination of the trust.* In

other words, that the only means by which this end could be accomplished would be by competent judicial action." (*Campbell* v. *Kawananakoa,* 34 Haw. 333, 334.) (Emphasis added.)

This court stated in *Campbell* v. *Kawananakoa, supra,* on page 335: " 'The testator has expressly declared in his will that he wishes *all* the authority of his trustees, and all their dominion over the property, to cease at the time that he has chosen for the termination of the trust.' " Quoting from the first case of *Campbell* v. *Kawananakoa,* 31 Haw. 500, this court stated in the latter case of *Campbell* v. *Kawananakoa,* 34 Haw. 333, at pages 337, 338, the following: " '*This is an unambiguous statement of the testator's intention and desire that the authority of his trustees shall cease at the time specified by him. * * * it* would be contrary to the intention of the testator for them to execute prior to the termination of the trust a lease to extend beyond the period of the trust.' " (Emphasis added.)

And at page 341 this court said: "There is another reason why we think the decree of the circuit judge should not be affirmed. It has been so often judicially declared that the will of the testator is the law of the case that it has become a legal maxim. It is true that cases have arisen and may again arise in which courts of equity dealing with trusts have found it necessary in the exercise of their inherent powers to deviate from the strict letter of the trust instrument in order to effectuate the cardinal purpose of the trustor. * * * There is nothing in the instant case that requires the application of this rule. The validation of the leases beyond the duration of the trust is neither necessary to the preservation of the trust *res* nor to the protection or conservation of the rights of beneficiaries of the trust as they are vested by the provisions of the trust instrument."

In summarizing the argument that if a lease were made extending beyond the term of the trust this would not prevent the passing of the title of the trust *res* to the remaindermen upon the termination of the trust, the court said at page 344: "Conceding this to be true the fact nevertheless remains that the ownership of the trust *res* and *the right of the remaindermen to deal with it according to their own wishes when they become entitled to it would not be an unqualified right as the trustor intended it should be but a right qualified by and subject to the provisions of the leases."* (Emphasis added.)

The chancellor properly held that under the two previous decisions of this court the trustees were not granted the power *under the will* of James Campbell to grant leases for a term that would or might extend beyond the duration of the trust, and that the sole issue was whether this was an appropriate case for the exercise of the power of the chancellor to permit a deviation from the terms of the trust. After considering the testimony, the chancellor held that this was an appropriate case to permit deviation from the strict terms of the trust.

If the Hawaiian statute as now appears in section 12573, Revised Laws of Hawaii 1945 (which states in substance that any circuit judge sitting at chambers in equity may if it appears for the benefit of the trust estate authorize the trustees to extend the terms of leases of real property for such periods as may be deemed advantageous to the estate, and that any lease or extension of the lease made under such authority shall continue in force for the period so authorized notwithstanding the trust shall have terminated), were applicable, the decision of the chancellor might be sustained on the evidence adduced. However, this court in *Campbell* v. *Kawananakoa,* 34 Haw. 333, held that: "When, under the terms of a testamentary trust it is the clearly expressed intent of the testator that upon

the termination of the trust the corpus of the estate shall go to the remaindermen, to be dealt with according to their wishes, the will of the testator is the law of the case having the authority and finality of a constitutional provision and in the absence of existing or threatened danger to the corpus of the estate or to the interests of beneficiaries it is beyond legislative power, by the enactment of a statute subsequent to the death of the testator and subsequent to the vesting of the rights of remaindermen, to authorize a court in equity to sanction a deviation from the trust instrument the effect of which would be to hinder or embarrass the remaindermen in the exercise of their rights."

Thus, the decision held that the statute had no application to trusts created prior to the passage of the Act.

Therefore, if in the present case authority to make a lease binding beyond the termination of the trust is permissible, it must be under the circumstances such as equity would permit without the aid of this statute. Obviously, from the testimony these conditions are not met. The authorities are in substantial agreement, and this court has ruled a number of times, that a deviation will be permitted only (1) where necessary to preserve the corpus of the estate and (2) to save the beneficiaries from want or poverty, and will not be permitted merely to produce a greater benefit for the beneficiaries. (*Campbell* v. *Kawananakoa,* 31 Haw. 500; 54 Am. Jur., Trusts, § 284, p. 225; 54 Am. Jur., Trusts, § 285, pp. 226, 227; *Hawaiian Trust et als.* v. *Gonser et als.,* 40 Haw. 245; *Johns* v. *Johns,* 172 Ill. 472; 7 Ill. L. Rev. 429; 38 Yale L. J. 801; 23 Calif. L. Rev. 86; 23 Calif. L. Rev. 91; *Reedy* v. *Johnson's Estate,* 200 Miss. 205, 26 So. [2d] 685; *In Re Hubbell Trust,* 135 Iowa 637, 113 N. W. 512.)

Although the majority opinion filed herein apparently is based on the theory that under the will the trustees of

their own volition have power to execute leases which would be binding beyond the terms of the trust (in such case no authorization by the court would be necessary though instructions might be sought as a matter of precaution), yet as most of the decisions cited in the majority opinion deal with *deviation* rather than with express or implied power in the trust instrument itself, and—as correctly pointed out by the chancellor below, deviation is the only possible theory upon which such leases could be authorized without absolutely disregarding the prior decisions of this court—I shall discuss the cases cited in the majority opinion as well as several additional.

In *Campbell* v. *Kawananakoa,* 34 Haw. 333, 342, the court in denying the right of the trustees to make a lease valid beyond the termination of the trust stated: "The validation of the leases beyond the duration of the trust is neither necessary to the preservation of the trust *res* nor to the protection or conservation of the rights of beneficiaries of the trust as they are vested by the provisions of the trust instrument."

Again, in the case of *Hawaiian Trust et als.* v. *Gonser et als.,* 40 Haw. 245, the syllabus is as follows: "A court of chancery may authorize a trustee to depart from the terms of the trust but such departure is justified only upon the occurrence of emergencies or unusual circumstances not anticipated by the settlor, in order to carry out his ultimate purpose, and to preserve, or to prevent loss or destruction of, the trust estate." In this same case at page 253 the following is quoted from 3 Bogert, *Trusts and Trustees,* part 2, section 742, page 571: "Something in the nature of an emergency is required to move the court to authorize a deviation from the settlor's plan of administration * * *." The case of *Weakley* v. *Barrow,* 192 S. W. 927, 137 Tenn. 244, cited in this *Gonser* case, stated: "The

exercise of the power depends, not on expediency, but on exigency."

"The mere fact that a sale of the land might benefit the beneficiaries more than the compliance with the terms of the trust does not furnish a reason for a decree ordering the title of the land to be disposed of in opposition to the manifest wish of the donor. The duty of the court in dealing with such a trust is to observe and carry out the purposes and plans of the donor, unless the preservation of the subject-matter of the trust, or some other like necessity, demands interference with his will and intention." (*Johns* v. *Johns,* 172 Ill. 472, 485, 50 N. E. 337, 342.)

*In Re Hubbell Trust,* 135 Iowa 637, the decision is that "Trustees holding title to property under a will with power to contract simply with reference to its use, and who are required by the will to turn over the property to the parties entitled thereto on the expiration of the trust, have no authority to execute a lease of the same for a series of years likely to extend beyond the trust period, except upon a showing that such is reasonably necessary to effectuate the purposes of the trust." It held that only upon a showing of such reasonable necessity, when not given such power by the instrument creating the trust, will the trustees be authorized to bind the estate so as to effectually deprive those ultimately entitled thereto of the property itself. This case further points out that leases should not be made unless they are reasonably likely to expire at about the time of the termination of the trust unless in case of necessity; that courts are more concerned in ascertaining the obligations of the trust and seeing that these are fulfilled by the trustees than in speculating on future contingencies or in increasing the income of the cestuis que trustent. Reviewing the English decisions, it finds "the law of England may be regarded as settled that trustees without express authority to lease may not do so for

terms which may or are likely to extend beyond the trust period."

With two exceptions, all of the cases cited in the majority opinion relative to the power of the trustees to grant leases which may extend beyond the probable duration of the trust or to deviate from the provisions of the will were cited in the briefs in the former cases of *Campbell* v. *Kawananakoa, supra,* and their rulings so far as contrary to our own decisions were discarded.

To justify trustees making leases to extend beyond the duration of the trust or other deviation, our decisions have uniformly followed the majority rule that there must exist a necessity or the occurrence of emergencies or unusual circumstances not anticipated by the settlor threatening loss or destruction of the trust estate, or a necessity to save the beneficiaries from want or poverty.

The first case cited in the majority opinion that was not considered in the former *Campbell* v. *Kawananakoa* cases was *Nashville Trust Co.* v. *Cain-Sloan Co.,* 29 Tenn. App. 39, 193 S. W. (2d) 103, which merely decided that the Tennessee statute permitted sale or lease of property belonging to minors. In that case one of the trusts expressly permitted sales and in the other there was no limitation upon sales or encumbrances.

The second case is *Kerlin's Lessee* v. *Bull et al.,* 1 Dallas 175 (U. S.), from which (apparently attempting to justify the overruling of the two former decisions of this court) the following is quoted in the majority opinion: "A court is not bound to give the like judgment, which had been given by a former court, unless they are of opinion that the first judgment was according to law; for any court may err; and if a judge conceives, that a judgment given by a former court is erroneous, he ought not in conscience to give the like judgment, he being sworn to judge according to law. Acting otherwise would have this consequence;

because one man has been wronged by a judicial determination, therefore every man, having a like cause, ought to be wronged also." However, it is interesting to note that instead of overruling the former decisions as the majority opinion contends, the court decided: "When there has been a solemn determination before two judges of the supreme court, after debate, and an acquiescence under it, there ought always to be great consideration paid to it, that the law may be certain. Upon the best information we can obtain from the gentlemen of the law in different parts of the state, we find that estates have been distributed agreeable to this determination. And as this construction of the act has been so long accepted and received as a rule of property, though some may not be satisfied in their private judgment, were the matter to be newly resolved, it is but reasonable, we should acquiesce and determine the same way, in so doubtful a case, to prevent greater mischiefs which may arise by shaking a number of estates, and from the uncertainty of the law." Apparently, according to the majority opinion in the present case no such rule should be followed but the former cases should be overruled however tenuous the reasoning by which this is accomplished.

In the case of *Ruggles* v. *Tyson,* 79 N. W. 766, 768 (Wis.), in discussing the grounds for deviation, it is said: "Rather than that the scheme of the creator of such estate shall entirely fail by reason of some circumstances not foreseen by him and provided for, the courts may intervene, but only for the purpose of, and so far as necessary to, preserve the property."

An article in 23 California Law Review 86 states that the courts respect and attempt to give effect to the exact terms of a trust instrument on the principle that an owner of property has the right, within certain limits, to pre-

scribe the mode of its use and management both during his life and after his death.

"Where there is no real emergency and the object of the applicant is merely to benefit the trust estate or to provide a better income for the present cestuis, *the income from the present res being sufficient to satisfy the trustor's purpose, the courts almost uniformly refuse permission, regardless of any change of circumstances.*" (23 Calif. Law Rev. 91.) (Emphasis added.) Similar comments are to be found in 28 California Law Review 785.

This so-called marginal land for which the trustees seek authority to lease for a period of 52 years consists of some 3,650 acres, comprising about 5% of the total area owned by the estate, and is at present rented at an annual rental of from $2 to $20 per acre plus taxes.

Without discussing the testimony as to what it would cost the trustees or their tenants to construct piggeries, the cost of making water and roads available to such lands, whether the demand for such lands is as great today as it was two years ago, whether government loans could be obtained on any holdings less than fee simple, whether there is a demand as testified to by some of the witnesses for leases of lands for shorter terms than the 52 years requested, the lack of evidence as to the similarity of the Campbell Estate lands to the lands of other estates which have been subdivided, and other testimony to show the "legal necessity" or the lack thereof justifying the granting of a lease extending beyond the term of the trust, the material evidence so far as the trustees are concerned may be summarized by the statement of Trustee Coke that "* * * *if we are going to give them* [the lessees] *a short lease* * * * *we are going to have to deal on a very much less margin of profit than if we could make a long term lease* * * *.*" (Emphasis added.)

The question is then reduced to a legal conclusion as

to whether the trustees should be authorized to grant a lease extending beyond the termination of the trust because in their opinion there would be more income received from such lease of the 5% land holdings. Assuming that more income would be received by such lease, should that justify it?

The trustor in his will states two purposes: (1) to provide a safe and certain income and maintenance for his wife, his children and his grandchildren for the period of the trust and (2) that the trustees shall keep intact his estate.

The testator's widow and two of his four children are now deceased, leaving two children and ten income-taking issue of his deceased children.

The evidence shows that the distributable annual income is in the neighborhood of $900,000 to $1,000,000. There was no evidence—in fact, no contention has been made—that a lease beyond the probable duration of the trust is necessary to preserve the corpus of the estate, nor is there the slightest evidence that there is any "emergency" that would render such lease necessary to save from want or poverty the beneficiaries of the trust. In other words, there is no evidence that the income from the *res* is not sufficient to serve the trustor's purpose.

Obviously, the chancellor and the trustees assumed that such lease was justified if it would provide an enhancement of the income to the beneficiaries. As pointed out, this is not the law (except possibly in the State of Illinois) and was rejected in the Territory by former decisions both of this court and of the circuit courts on numerous occasions.

The age of the youngest life tenant is 60 years, with a life expectancy of slightly more than 14 years. Under such circumstances, a lease of 52 years would extend the lease

approximately 18 years beyond the termination of the trust.

The majority opinion, after stating that it recognizes a conflict in the authorities as to the general powers of trustees to extend leases beyond the probable duration of the trust, states in substance that the better rule is that the trustees have such power when it is to the "obvious interests" of the estate; that "The position taken here accords with the statutory rule for extending leases for trust property" (citing R. L. H. 1945, § 12573, which as shown in *Campbell* v. *Kawananakoa,* 34 Haw. 333, *supra,* has no application to trusts created prior to its enactment), and that "the soundness of that position both as to the law and the facts of this case could not be better expressed than was done in the analogous case of *Lindenberger* v. *Kentucky Title Trust Co.,* 270 Ky. 579, 110 S. W. (2d) 301, at pp. 303, 304 * * *."

The *Lindenberger* case states: "Here we have the situation that the trust property, though vastly valuable, is yielding in its present condition but little more income than is necessary to pay taxes."

On the other hand, the Campbell Estate after paying all expenses, including taxes and substantial trustees' commissions, has approximately $1,000,000 per annum to distribute among 12 beneficiaries. (Further, the rent from the so-called marginal lands in the Campbell Estate is net and above taxes.) Quite a similarity to the Kentucky case!

This court in *Campbell* v. *Kawananakoa,* 31 Haw. 500, rejected the rule of "obvious interest" as applied in the majority opinion. This decision quoted from 38 Yale Law Journal 801 in its discussion of the power of trustees to execute long-term leases upon approval by a court of equity. In quoting from the Yale Law Journal it said " 'there must be shown to exist an exigency rendering an execution of a long term lease reasonably necessary for

the preservation of the property, or for effectuating the intention of the trustor with regard to the purposes of the trust.' " Then, the further statement: " 'There seems to be a trend to determine that the lease is "reasonably necessary" within the rule, when it is highly beneficial to all the parties and advantageous to the income of the estate.' 38 Yale Law Journal, 801-802." Our court said: "This tendency, if it is such, should not be too readily yielded to. The intent of the testator should be the ultimate guide in this class of questions of construction as well as in other classes."

The case of *Denegre* v. *Walker,* 214 Ill. 113, 73 N. E. 409, the leading and practically the only authority authorizing the long-term lease on the ground of business expediency (which rule the majority opinion adopted) has been severely criticised and thoroughly discredited. In *Denegre* v. *Walker* the court authorized a 99-year lease when the trust was to be terminated in eight months! In 7 Illinois Law Review 429 wherein this case was reviewed it is said: "In *Denegre* v. *Walker* the court seems to have gone very far in giving power to the trustees to make a long-term lease. It looks as if the court regarded its action as justified upon mere grounds of business expediency. It is submitted that the case is one which the profession should be careful about leaning heavily upon."

Again, in 16 American Law Reports attention was called to the fact that *Denegre* v. *Walker* was criticised in *Re Hubbell Trust,* 135 Iowa 637, *supra,* in which the court pointed out that the *Denegre* case had *gone further than any court had previously gone and ignored all previous grounds for granting long-term leases.*

At the time the trustees sought approval of the proposed leases of 50 years to Ewa and Oahu plantations, the leases would have exceeded the life expectancy of the youngest life beneficiary by eight years. In the present

case the majority opinion, in distinguishing the proposed Ewa and Oahu leases from the instant case, states that there was less reason for approving the former leases because the probability was far stronger then that these long-term leases would expire within the trust period than in the instant case! (The probability in the former two cases was that the leases would extend eight years beyond the end of the trust, in the present case 18 years.) According to this reasoning, the longer the lease extends beyond the life of the trust, the greater the desirability of such lease. This, with the statement in the majority opinion that "The will expresses no prohibition whatsoever against leasing lands of the trust or against leasing them for a term beyond the duration of the trust" are used as *reasons* to interpret the will of James Campbell to the effect that such an extension of the leases beyond the terms of the trust was the testator's intent (implied?) !

Again, the statement that where the duration of the trust is indeterminate and the trustees are clothed with powers of management with duties to produce an income for the period of the trust from trust realty, the trustees by *necessary implication* have the implied power to lease for a definite term extending beyond the probable duration of the trust when reasonably exercised in furtherance of the trust as required by the "obvious interests" of the trust estate is, as previously pointed out, about as far from the law relative to long-term leases as one can get. This is truly a decision wherein the writer "cast[s] all rules aside * * * to fish for the testator's intent without a line."

The first rule "cast aside" by the majority opinion is that the intentions of the testator are to be collected from his words. (See analysis of words in *Campbell* v. *Kawananakoa,* 31 Haw. 500, and *Campbell* v. *Kawananakoa,* 34 Haw. 333, 342, quoting from *Smith* v. *Bell,* 6 Pet. 68 [U. S.], and 2 Blackstone Com. 499, and citing more than

a dozen Hawaiian cases beginning with *Harris* v. *Judd,* 3 Haw. 421, and ending with the *Estate of Campbell,* 33 Haw. 799.)

Another elementary rule of trust law "cast aside" by the majority opinion is that without express authority trustees may not lease for terms which are likely to extend beyond the trust period. In fact, even the beneficial owner of a life estate or for a period of years or for the life of another plus a period of years may not bind the property beyond that period. As stated in the *Matter of McCaffrey,* 50 Hun. 371, 374, 3 N. Y. Supp. 96, "it would seem strange that one who holds an estate in trust for the life of another should have a power over the remainder, which would not have belonged to him if he had held the estate absolutely for life and not in trust." Thus, the only occasion that will give such power, in the absence of authority in the instrument itself is, as pointed out by scores of cases, a finding of necessity either to preserve the corpus of the estate or to save the beneficiaries from want, and not merely to produce a greater benefit for the beneficiaries. (See cases cited *supra.*)

The will of the testator was carefully drawn and beyond any question the scrivener knew the elementary principle of law that trustees had no power to lease beyond the termination of the trust (except in emergencies as heretofore discussed). Had the testator desired his trustees to have such powers he would have expressly given them power to lease beyond the termination of the trust. It is true that the term of the trust is indefinite, but upon the death of his last child it becomes definite, namely 20 years thereafter. This period after the death of the last child gives the trustees ample time to provide that the property be delivered free and clear from all encumbrances as this court has in two decisions stated was the obvious "intent of the testator." Instead of specifically granting

such power or giving such power by implication, the testator does just the contrary for, as stated in *Campbell* v. *Kawananakoa, supra,* "The testator has expressly declared in his will that he wishes *all* the authority of his trustees, and all their dominion over the property, to cease at the time that he has chosen for the termination of the trust"; again, "This is an unambiguous statement of the testator's intention and desire that the authority of his trustees shall cease at the time specified by him"; and also this court has further stated that should the leases extend beyond the termination of the trust "the right of the remaindermen to deal with it according to their own wishes when they become entitled to it would not be an unqualified right *as the trustor intended it should be but a right qualified by and subject to the provisions of the leases."* (Emphasis added.)

This court in twice interpreting the will of James Campbell did not say that "he [the testator] wishes *all* the authority of his trustees, and all their dominion over the property, to cease at the time that he has chosen for the termination of the trust" be applied to highly productive land only and not to so-called marginal land; nor did this court say that the trustor intended the right of the remaindermen should not be "qualified by and subject to the provisions of the leases" over productive land and not over unproductive land. Nor did it say "that the right of the remaindermen to the complete ownership of and dominion over the corpus of the estate, upon the termination of the trust, having, by the death of the testator and the birth of members of the designated class of remaindermen, ripened into a vested right, it was beyond the power of the legislature in the instant case to authorize the equity court to place a burden or restriction upon the exercise of this right" applied to productive property only and not to marginal lands.

The testator's will in no way implied that he had a different intent as to section A or section B, but the whole *res* should be transferred to the remaindermen free of encumbrances at the end of the 20-year period following the death of his daughter last surviving. The language is clear and equally applicable to all property coming under its terms.

It is a reasonable assumption that the trustor, a man of great wealth and extensive business experience, realized that in handling a large estate consisting of real property placed in trust for an indefinite term and over a long period of time it would be practically impossible to require the contract for the use of every parcel of land to be so timed that it would end at the same moment as every other. This, as well as the fact that all grandchildren then surviving would be of age, therefore might well account for the 20-year period following the death of the last survivor of his daughters before the final distribution of the estate. At that period the termination of the trust would be certain and the trustees would have ample time to so arrange that all property would be turned over to the ultimate remaindermen free from encumbrances, as the testator desired, when the authority of the trustees ceased.

Logically the term of a lease is necessarily limited by the quantity of the estate. Thus, one with an estate for life cannot make a lease binding beyond his life, and one with an estate for years cannot make a lease extending beyond that term. This proposition is elementary as to beneficial ownership; however, if one has a title as trustee it is an extraordinary proceeding to permit such trustee by his own act for all practical purposes to enlarge the quantity of the estate held by him by executing a lease extending beyond the term of the trust ownership. Thus, there must be an extraordinary situation threatening the very existence of the trust, or at least the testator's inten-

tion to provide a living income for his beneficiaries, before the courts should approve such act.

It has been the unquestioned law of Hawaii for at least two decades that trustees to manage property cannot (in the absence of an extraordinary situation as above mentioned), without express authority in the trust instrument, lease the trust property for terms which are likely to extend beyond the trust period. (*Campbell* v. *Kawananakoa*, 31 Haw. 500, and *Campbell* v. *Kawananakoa*, 34 Haw. 333, *supra*.) This is the law in England and in all of the States except possibly Illinois. "In none save the Illinois decisions have the terms [of a lease] been such as were likely to extend any considerable time beyond the trust period. That the power to lease is thus limited seems to be laid down in the text-books." (*In Re Hubbell Trust*, *supra*, quoting from and citing Perry on *Trusts*; 2 Beach on *Trusts & Trustees*; McAdams, *Landlord & Tenant*; James on *Landlord & Tenant*; Hill on *Trustees*; Kerr on *Real Property*.)

The opinion of the majority by a tenuous and stilted reasoning and in disregard of the express language of the will overrules the unquestioned law of Hawaii for more than two decades and substitutes the judgment of the trustees for the will of the testator. It sets forth a dangerous doctrine and is a complete repudiation of the doctrine that " 'The rights of an owner of property to control its use and management * * * after his death * * * are among the most sacred, and entitled to the most careful protection at the hands of courts, without scrutiny as to the quality of his reasons in making such choice. * * *' " (*Campbell* v. *Kawananakoa*, 34 Haw. 333, 347, quoting from *Upham* v. *Plankinton*, 152 Wis. 275.)

Admitting that the trust estate may gain more income by such substitution (although the judgment of trustees is not always infallible in such matters) there is no longer

any assurance that when a testator leaves property to be held in trust for life with remainder over, such remaindermen will ever receive such property free of encumbrances as the trustor intended. If a lease may be authorized for 52 years, there is no reason why it should not be for 100 years. Even in the present case it is highly improbable that the remaindermen, grandchildren of the testator, will ever receive the trust property except as subject to long-term leases. Further, some of the remaindermen may prefer to receive this property unencumbered by leases for piggeries that may possibly extend for a 20-year or a 25-year period after they are entitled to it.

In conclusion, to summarize and repeat: (1) It is well settled that trustees to manage property cannot in the absence of authority in the trust instrument lease the trust property for terms which are likely to extend beyond the trust period; (2) as twice decided by this court, the will of James Campbell gives no such authority but on the contrary expressly contains "an unambiguous statement of the testator's intention and desire that the authority of his trustees shall cease at the time specified by him" and that the remaindermen have an unqualified right to the property at that time "as the trustor intended" and not "a right qualified by and subject to the provisions of the leases"; (3) section 12573, Revised Laws of Hawaii 1945, referred to *supra,* is unconstitutional so far as it attempts to authorize a court in equity to sanction a deviation from the terms of a trust in effect prior to the enactment of such section the result of which would be to hinder or embarrass the remaindermen in the exercise of their rights and the Act does not permit the trustees of the Campbell Estate to make a lease which may extend beyond the probable duration of the trust merely because such lease would be advantageous to the trust estate; (4) the evidence is not sufficient to show that a lease probably extending be-

yond the duration of the trust is necessary to preserve the corpus of the estate or to save the beneficiaries from want or poverty, and the same will not be permitted merely to produce a greater benefit for the beneficiaries; the evidence merely shows "an expediency and not an exigency."

The case should be reversed and the trustees instructed that they may make reasonable leases of the property for a term not likely to extend beyond the duration of the trust.